215 N.J. Super. 401 (1987)
521 A.2d 1350
IN RE THE APPLICATIONS OF OVERLOOK HOSPITAL AND MORRISTOWN MEMORIAL HOSPITAL FOR CERTIFICATE OF NEED.
Superior Court of New Jersey, Appellate Division.
Argued February 3, 1987.
Decided March 3, 1987.
*403 Before Judges PRESSLER, GAULKIN and ASHBEY.
Zulima V. Farber argued the cause for appellant Newark Beth Israel Medical Center (Lowenstein, Sandler, Brochin, Kohl, Fisher & Boylan, attorneys; Zulima V. Farber and Fredda G. Katcoff, on the brief).
Kathleen O. Curley, Deputy Attorney General, argued the cause for respondent State Department of Health (W. Cary Edwards, Attorney General of New Jersey, attorney; James J. Ciancia, Assistant Attorney General, of counsel; Ellis I. Medoway, Deputy Attorney General, on the brief).
Arnold K. Mytelka argued the cause for respondent Overlook Hospital (Clapp & Eisenberg, attorneys; Arnold K. Mytelka and Agnes I. Rymer, on the brief).
J. William Barba argued the cause for respondent Morristown Memorial Hospital (Shanley & Fisher, attorneys; J. William Barba, William G. Becker, Jr., and Stephanie C. Rosen, on the brief).
The opinion of the court was delivered by PRESSLER, P.J.A.D.
This appeal, which arises out of the State Department of Health's certificate of need program, raises issues respecting the hearing and discovery rights of rejected applicants for a *404 certificate of need who seek to challenge the Commissioner of Health's recommended denial of their applications, his grant of a certificate to a competing applicant, and his determination of the extent of the existing need for which any certificate would be issued.
In 1984 five hospitals in Health Care Area II of the State, consisting of Essex, Morris, and Union Counties, filed certificate of need applications for cardiac surgical programs. Newark Beth Israel Medical Center sought to expand its existing program, and the other four, Overlook Hospital, Morristown Memorial Hospital, St. Barnabas Hospital, and University of Medicine and Dentistry of New Jersey  University Hospital, sought to establish programs. In April 1985, after a comprehensive review process, the Commissioner of Health approved the application of Beth Israel, granting it permission to add one operating room to its cardiac surgery program and to convert six existing medical surgical beds to cardiac intensive care beds. On the same date, he advised the other four hospitals that he was recommending denial of their applications and of his reasons for that action. Although the statements of reasons in each of the denial letters varied, common to all was the finding that the Beth Israel application was "superior" to the other four and that the approval of additional applications "at this time would drive utilization down and further inflate costs and therefore be inconsistent with the goals of N.J.S.A. 26:2H-1." Each of the denial letters also advised the rejected applicant that it was entitled to request an administrative hearing to review the Commissioner's determination. Overlook and Morristown Memorial made such a request. They also appealed to this court from the Commissioner's grant of Beth Israel's application. By order of the New Jersey Supreme Court, the proceedings on the appeal from the Beth Israel grant have been stayed pending completion of the administrative proceedings on the Overlook and Morristown Memorial denials. The Supreme Court also ordered, with respect to those administrative proceedings, that the two rejected applicants "will be permitted to *405 address the Commissioner's decision granting a certificate of need to Newark Beth Israel Medical Center." Beth Israel is not, however, a party to those proceedings and has declined to intervene therein.
The issue before us concerns the right of Overlook and Morristown Memorial, in preparation for the hearing on their denials, to obtain extensive discovery from Beth Israel relating both to its existing cardiac surgical program and to its application for a certificate of need for expansion of the program. They have identified eighteen topics on which they seek discovery and they also seek production of fifteen sets of documents.[1] Beth Israel resisted the discovery demand, and Overlook *406 *407 and Morristown Memorial applied to the Office for Administrative Law for relief. Following a hearing, the administrative law judge entered an order requiring Beth Israel to submit to discovery and issued a subpoena directing it to appear at a discovery deposition, to produce the requested documents, and to designate the person or persons competent to testify on each of the enumerated topics. We granted Beth Israel's motion for leave to appeal from the discovery order, and we now reverse.
We reject Beth Israel's contention that the administrative law judge lacked the power to order pretrial discovery by way of issuance of a deposition subpoena duces tecum. That power is implicit in N.J.S.A. 26:1A-47, which accords a subpoena power to the Commissioner of Health himself, and N.J.A.C. 1:1-11.3, which permits pretrial depositions for good cause shown.[2] The issue before us is, rather, whether good cause was shown for the grant by the administrative law judge of the broad discovery here ordered. That issue must be resolved in the context of the complex, comprehensive, and coordinated framework of state and federal legislative and regulatory enactments governing the health care delivery system.
We begin with the Health Care Facilities Act, N.J.S.A. 26:2H-1, et seq., which designates the State Department of Health as the state agency for comprehensive health planning under the National Health Planning and Resources Development Act of 1974, 42 U.S.C.A. § 300k, et seq., § 300m, and delegates to it "the central, comprehensive responsibility for the development and administration of the State's policy with respect to health planning, hospital and related health care *408 services and health care facility cost containment programs, and all public and private institutions" rendering health care. N.J.S.A. 26:2H-1. The statute requires the State Commissioner of Health to recognize the Statewide Health Coordinating Council and the Health Systems Agencies, established under federal law and to whom recommending functions are delegated by the national act, 42 U.S.C.A. § 300l,[3] and establishes in the State Department of Health an independent Health Care Administration Board (HCAB). N.J.S.A. 26:2H-3 and -4, respectively. At the heart of the legislation is the requirement of a certificate of need as a condition for the construction or expansion of health care facilities and the institution of new health care services. N.J.S.A. 26:2H-7. The factors to be considered in issuing a certificate of need, to be supplemented by regulation, are catalogued by N.J.S.A. 26:2H-8[4] and the procedures to be *409 followed in the application process are prescribed by N.J.S.A. 26:2H-9, which provides in full as follows:
Certificates of need shall be issued by the commissioner in accordance with the provisions of this act and based upon criteria and standards therefor promulgated by the commissioner. The commissioner shall establish minimum requirements and maximum needs for health care facilities in each area or region of the State, taking into consideration the recommendations of the health systems agencies and the Statewide Health Coordinating Council.
No such certificate shall be denied without the approval of the board and prior to the determination by the board, the applicant shall have been granted opportunity for hearing and the commissioner or his designee shall have furnished the board in writing his recommendations and reasons therefor; and no decision shall be made by the commissioner contrary to the recommendations of the Statewide Health Coordinating Council or the Health Systems Agency concerning a certificate of need application or any other matter, unless the council and the Health Systems Agency and the applicant shall have been granted opportunity for hearing. Requests for a fair hearing shall be made to the Department of Health within 30 days of receipt of notification of the commissioner's action. The department shall arrange within 60 days of a request, for fair hearings on all such cases and after such hearing the commissioner or his designee shall furnish the board, the council, the Health Systems Agency and the applicant in writing the hearing examiner's recommendations and reasons therefor. The board within 30 days of receiving all appropriate hearing records or, in the absence of a request for a hearing within 30 days of receiving the denial recommendations of the commissioner, shall make its determination.
To summarize the statutory scheme, the Commissioner has the power to grant a certificate of need but not to deny one. His decision to deny must be approved by the HCAB following the grant of a hearing opportunity to the rejected applicant. See generally National Nephrology Foundation v. Dougherty, 138 N.J.Super, 470 (App.Div. 1976).
Pursuant to N.J.S.A. 26:2H-5(b), the Commissioner has promulgated comprehensive regulations, N.J.A.C. 8:33-1.1, et seq., governing the certificate of need process which integrate the requirements of the national act,[5] pursuant to which the State *410 has been divided into five health service areas, each under the jurisdiction of a designated health systems agency. See N.J.A.C. 8:33, Exhibits 1 and 2. The general provisions of the regulations require preliminary review and recommendation of each application for a certificate of need by the appropriate health systems agency and the Statewide Health Coordinating Council in accordance with the minimum requirements and needs established by the Commissioner for each area of the state and with all other guidelines and criteria prescribed by the State health plan and State medical facilities plan. N.J.A.C. 8:33-1.3(i)(k).
N.J.A.C. 8:33-1.5 prescribes review cycles for both "batched" and "non-batched" certificate of need applications for designated health care services and facilities. The term "batched" is effectively defined by N.J.A.C. 8:33-2.8(a) as the consideration of applications "in relation to each other" and obviously contemplates the comparative review of applications seeking to provide the same health care service for the same health care area at the same time. See 42 U.S.C.A. § 300n-1(b)(13)(A)(iii), authorizing both health systems agencies and the state agency to include in their review programs "provision for all completed applications pertaining to similar types of services, facilities, or equipment affecting the same health service area to be considered in relation to each other (but no less often than twice a year)." Thus, depending on the determined extent of the need which is the subject of the certificate of need application, those whose applications are batched may but need not be competitors for permission to render a particular health care service. In any event, the five applications here made for cardiac surgical programs were batched, as required by N.J.A.C. 8:33-2.8(a)(5). What is fundamentally in issue is the apparent anomaly, as applied to a comparative review process, of the technique of N.J.S.A. 26:2H-9 which renders Commissioner's approval of one application final while the question of the propriety of the denial of the others is still administratively pending and which, consequently, provides no mechanism for a single *411 administrative review of the totality of the Commissioner's decision on batched applications. See generally National Nephrology Foundation v. Dougherty, supra.
In order to address the effect of this anomaly on the hearing rights of rejected applicants, we must make further reference to the administrative process by which certificate of need applications are reviewed. We are dealing here with what N.J.A.C. 8:33-1.6 defines as a "full review process," namely, the review of the application by the appropriate health systems agency, the Statewide Health Coordinating Council and the Department of Health, a process which "generally results in a decision within 90 days of the beginning of a review cycle." Each applicant in a batched review is an "affected person" not only in respect of his own application but in respect of the others as well by virtue of the definition of N.J.A.C. 8:33-1.6 which includes as "affected person" those health care facilities in the same health service area which "prior to the receipt by the agency of the proposal being reviewed have formally indicated an intention to provide such similar services in the future." Affected persons are, moreover, accorded significant procedural rights during the review process, including notification by the health systems agency, N.J.A.C. 8:33-3.4; the right to request a public hearing by the health systems agency, N.J.A.C. 8:33-3.8(b)(3);[6] the right to request, for stated good cause, a public hearing for purposes of reconsideration of final agency action, N.J.A.C. 8:33-3.6(h); and the right to request the Department for an administrative review of the Commissioner's decision to issue a certificate of need, N.J.A.C. 8:33-3.6(i). Batched applicants are thus accorded extensive opportunities *412 during the course of the process to challenge their competitors' submissions and to present their own claims of superiority.[7]
It is, moreover, clear that the substantive review by the health systems agency, the Statewide Health Coordinating Council, the Commissioner's Cardiac Advisory Committee, and the Commissioner is comprehensive under both federal and state law. See, e.g., 42 U.S.C.A. § 300n-1(c), establishing 14 minimum criteria to be considered in the review process. And see N.J.A.C. 8:33-3.7, prescribing similar and supplementary criteria in accordance both with the national act and N.J.S.A. 26:2H-8. Moreover, cardiac facilities such as those here involved are also subject to the additional specific requirements of N.J.A.C. 8:33E-1.1, et seq. (Certificate of Need: Cardiac Facilities) and to the further review and recommendation of the Commissioner's Cardiac Advisory Committee. N.J.A.C. 8:33E-1.5. Substantial supporting responsive detail is therefore part of every application. In short, all five batched applications here have been exhaustively and serially reviewed with respect to quality control and cost containment concerns. Moreover, a comparison of the state and federal statutory review criteria with the discovery sought by Overlook and Morristown Memorial persuades us that every item of information sought by Overlook and Morristown Memorial from Beth Israel is comprehended by one or more of the criteria and is consequently included or includable in the comparative review process. Indeed, although Overlook and Morristown Memorial argue that they are seeking some specific items of information which are not already included in Beth Israel's agency submissions,[8] they *413 concede that much of what they seek by way of discovery is so included, albeit, in some cases in different form.
The issue then is whether in view of all of the foregoing, Overlook and Morristown Memorial are entitled to the broad discovery they seek from Beth Israel. Our conclusion is that they are not so entitled. We base this conclusion primarily on what we perceive to be the predicates of a denial hearing which takes place at the end of the administrative review process. The determination to be made at the hearing prescribed by N.J.S.A. 26:2H-9 is the reasonableness of the Commissioner's exercise of discretion in concluding, based on all the documentary submissions and the recommendations of all the preliminary reviewing agencies, that of the five batched applications Beth Israel's was superior in meeting the relevant criteria and that each of the others had some stated deficiency. See National Nephrology Foundation v. Dougherty, 138 N.J. Super. 470, 478-479 (App.Div. 1976).[9] The question we must decide is whether the propriety of the Commissioner's exercise of discretion is to be tested by the factual predicates presented in the voluminous documentation he considered or whether, in challenging his exercise of discretion, the rejected applicants can go behind that documentation, questioning the accuracy, soundness, and integrity of the data on which its successful competitor's *414 application was based and requiring the successful competitor to produce additional information not required of it by any agency during the review process.
We appreciate the rejected applicants' due process argument, namely, that as a matter of fundamental fairness their opportunity to challenge the Commissioner's denial of their applications by way of an administrative hearing can only be meaningful if they are also accorded the opportunity at that hearing to challenge the Commissioner's conclusion that their competitor's application was superior. Cf. Ashbacker Radio Corp. v. F.C.C., 326 U.S. 327, 66 S.Ct. 148, 90 L.Ed. 108 (1945). We are persuaded that it was that due process concern which underlay the Supreme Court's order permitting them to "address" the Commissioner's decision to grant a certificate of need to Beth Israel.
We conclude, however, that, to the extent the issues at the denial hearing implicate the content of the Beth Israel application and in the absence of any showing of fraud or bad faith, the rejected applicants are limited in their address thereof to the application as filed. We reach this conclusion for a variety of reasons. First, we regard it as most consistent with the basic policy underlying administrative process. As we have pointed out, the batched applications were subjected to extensive multiple and professional comparative reviews before ultimate submission to the Commissioner. Each competing applicant had the opportunity during the review process to examine, evaluate, and investigate every other application, to request a public hearing, and to point out to the reviewing agency any alleged deficiency, defect, impropriety, or imperfection in any other application. In our view, the legitimacy of the entire review process would be compromised if one applicant were permitted to attack the integrity of another's application after the process is completed. This is particularly so when the *415 demanded discovery is largely duplicative of information already submitted to the reviewing agency and as to which all the competing applicants have had prior access and challenge opportunities.
We further point out that the review process is conducted on the basis of applications which have already been certified as complete, both by the Health Service Agency and the Department, and that once an application has been determined to be complete and is submitted to the review process, it may not be supplemented except in response to specific request from a reviewing agency. N.J.A.C. 8:33-3.3(a), (c). We must assume therefore that all items of information prescribed by regulation and regarded as relevant by any of the reviewing agencies have been submitted by all applicants prior to the Commissioner's review. Thus, it is one thing to claim, as clearly the rejected applicants may do, that based on all the documentation generated by the review process the Commissioner erred in his comparative analysis or that his stated reasons for approval or disapproval were inadequate or insufficiently supported by the totality of the information before him. It is quite another to permit the rejected applicants, without any prior showing of impropriety or inaccuracy, to seek to undermine or impugn the information contained in their competitor's application.
We are, moreover, convinced that the kind of discovery which the rejected applicants here seek injects delay and expense into the certificate of need process which prejudice the public interest and violate the legislative purposes of quality control and cost containment without affording any offsetting justification in either those terms or in due process terms. Both the federal statute and the New Jersey statute, as well as New Jersey's implementing regulations, prescribe timetables for the entire review process, including the hearing on the Commissioner's denial recommendation. See, e.g., 42 U.S.C.A. § 300n-1(b)(2), N.J.S.A. 26:2H-9, N.J.A.C. 8:33-1.6 (definition of "full review *416 process"), N.J.A.C. 8:33-3.5(b), N.J.A.C. 8:33-3.6(g), (h) and (i). The evident purpose of the prescribed schedule is to assure the actual provision of a needed health care service or facility as expeditiously as is possible consistent with a proper execution of the review function. We assume from this record that as of April 1985, when the Commissioner made his decision on these applications, there was a then existing need for at least one additional cardiac surgery operating room in Health Care Area II. At least no one disputes that proposition. Almost two years have elapsed since that time, and the denial hearing has not yet been held. We have no doubt that according the rejected applicants the broad discovery it seeks from Beth Israel by way of prehearing depositions and document discovery cannot but add significant delay to the final disposition and impose substantial cost on all the participants in the certificate of need process. In this regard, we note that at this time Overlook and Morristown Memorial are united in their efforts to challenge Beth Israel's approval. But they remain competitors, and surely the time will come, as counsel concede, when each will attempt to demonstrate its own superiority and in that effort may seek concomitant discovery in respect of each other's application. In the meantime, it may be anticipated that Beth Israel will conclude that if these are the rules of the hearing, it will have to defend the Commissioner's approval of its application by intervening in the pending hearing and conducting its own discovery into the applications of Overlook and Morristown Memorial. We fail to see how this kind of discovery will advance the legitimate aims of any of the applicants, the administration of the health care system as a whole, or the essential due process demands of the administrative process. In short, we are convinced that the statutorily accorded hearing on the Commissioner's denial need not and never was intended to be proceeded by a discovery replay of the entire review process and its factual predicates. Compare Clear TV Cable Corp. v. Public Util. Comm'rs, 85 N.J. 30, *417 55-56 (1981); Commercial Cleaning Corp. v. Sullivan, 47 N.J. 539 (1966); Merry Heart Nurs. & Conv. Home v. Dougherty, 131 N.J. Super. 412, 419 (App.Div. 1974).
We are satisfied that the rejected applicants can obtain a meaningful hearing without the broad discovery they seek. They are free to produce evidence, including the testimony of witnesses, challenging the Commissioner's view of the comparative superiority of the applications, the comparative weight accorded by him to particular aspects of each of the applications, his conclusion as to the extent of the need for additional cardiac surgical facilities, his decision to respond to that need by approving programs in Newark to the exclusion of the rest of Health Care Area II, and the like. They can also challenge facial inconsistencies or insufficiencies of the Beth Israel application, and they can challenge those of its application statements, if any, which are based on matters of professional opinion. There are undoubtedly other areas of challenge as well which can be effectively pursued in the absence of broad, duplicative, and ultimately overburdensome discovery.
Ultimately, we agree with the perception of National Nephrology Foundation v. Dougherty, supra, 138 N.J. Super. at 478-479, that much of the difficulty here is attributable to the dichotomy of N.J.S.A. 26:2H-9. A more cohesive statutory scheme in respect of the Commissioner's decision on batched applications and a single review thereof would considerably alleviate much of the procedural anomaly, both on the administrative level and in this court. We are, however, bound by the dictates of the present scheme and the consequent bifurcation of approval and denial consequences and procedures.
The order appealed from is reversed, and the matter is remanded for further proceedings.
NOTES
[1] The "Schedule of Topics" on which discovery is sought from Beth Israel includes the following:

1. The content of your certificate of need application including all supplements thereto, to expand your cardiac surgery program.
2. The cost of cardiac surgery at your hospital.
3. Any requests by you to the Department of Health for an adjustment in your reimbursement rates for cardiac surgery.
4. Derivation of the cost projection data in your certificate of need application.
5. Progress in implementing your April 4, 1985 certificate of need.
6. Occupancy rates, mortality rates, referral patterns and utilization of your hospital, your cardiac catheterization laboratory and your cardiac surgery program from 1980 to the present.
7. Current financial condition of your hospital and progress of all fund-raising efforts.
8. Agreements between you and University of Medicine and Dentistry of New Jersey regarding cardiac surgery programs and thoracic surgery residents.
9. Your general service area, your service area for cardiac catheterization and your service area for cardiac surgery, for each year from 1975 to 1985 inclusive.
10. The types, amounts and costs of all supplies (disposable and nondisposable) used by you in cardiac surgery.
11. All sources of funding for your cardiac surgery program.
12. The quality of care in your hospital, your cardiac surgery program and your cardiac catheterization laboratory.
13. Occupancy rates, mortality rates, referral patterns and utilization of your new interventional laboratory for specialized procedures.
14. Use of Percutaneous Transluminal Coronary Angioplasty at your hospital.
15. The number of patients treated at your hospital for unstable angina or myocardial infarction for each of the following years: 1982, 1983, 1984, 1985 and 1986 to date.
16. The numbers and qualifications of the cardiologists and the cardiac surgeons now working at your hospital.
17. All plans that you have to close beds or eliminate services.
18. The impact, if any, of a cardiac surgery program at Overlook Hospital on your cardiac surgery program.
The "Schedule of Documents to be Produced" demands the following:
1. All documents which reflect, relate or refer to the actual direct patient care costs of cardiac surgery at your hospital for each year from 1980 to 1985 inclusive.
2. All documents which reflect, relate or refer to the reimbursement rates paid to you for cardiac surgery for each year from 1980 to 1985 inclusive.
3. All documents which reflect, relate or refer to the actual indirect costs of cardiac surgery at your hospital for each year from 1980 to 1985 inclusive.
4. All documents and tangible items that reflect, relate or refer to any request by you to the Department for an adjustment in your cardiac surgery rates, for each year from 1980 to 1985 inclusive, whether such requests were called rate appeals, legal appeals, data error or correction appeals, or any other titles.
5. All documents that describe, reflect, relate or refer to (i) your general service area, (ii) your service area for cardiac catheterization, and (iii) your service area for cardiac surgery, for each year from 1975 to 1985 inclusive.
6. All documents that reflect, relate or refer to any agreements between you and UMDNJ regarding a cardiac surgery program at UMDNJ.
7. All reports concerning (i) your cardiac catheterization laboratories and (ii) your cardiac surgery program, submitted to the Department since 1979.
8. All documents that reflect, refer or relate to any agreement between you and St. Michael's Medical Center concerning cardiac surgery.
9. The Analysis of Herman Smith Associates, referred to on page 30 of the Narrative accompanying your certificate of need application to expand your cardiac surgery program.
10. The Cardiac Surgical Centers Annual Report, 1982, referred to on page 27 of the Narrative accompanying your certificate of need application to expand your cardiac surgery program (footnote 5).
11. All documents that reflect, refer or relate to any agreements between you and UMDNJ regarding a thoracic surgery residency affiliation.
12. All documents which reflect, refer or relate to any discussions about cooperative arrangements between you and UMDNJ concerning cardiac surgery, including any documents that were sent to the SHCC.
13. All documents that reflect, refer or relate to the derivation of all cost data in your certificate of need application.
14. All schematic plans that you have submitted to the Department of Health relating to your April 4, 1985 cardiac surgery certificate of need.
15. The "national cooperative study" discussed at page 22 of the Narrative to your certificate of need application in the paragraph beginning "Percutaneous transluminal coronary angioplasty (PTCA)...."
[2] The Department of Health has filed a brief in support of the subpoena power, taking no position on the question of whether there was good cause here shown or on any other question.
[3] The scheme of 42 U.S.C.A. § 300l, the Health Systems Agency law, is to require, throughout the country, the establishment of health service areas, each under the general supervision of a health systems agency. 42 U.S.C.A. § 300m-3 requires each state to establish a Statewide Health Coordinating Council to advise the State Agency, in New Jersey the Department of Health by virtue of N.J.S.A. 26:2H-1, consisting at least in part of representatives of the health systems agencies within the state. Among its functions is the review and coordination of the health systems agencies and the preparation of a state health plan consisting of the plans of each of the health systems agencies.
[4] N.J.S.A. 26:2H-8 provides in part that:

No certificate of need shall be issued unless the action proposed in the application for such certificate is necessary to provide required health care in the area to be served, can be economically accomplished and maintained, and will contribute to the orderly development of adequate and effective health care services. In making such determinations there shall be taken into consideration (a) the availability of facilities or services which may serve as alternatives or substitutes, (b) the need for special equipment and services in the area, (c) the possible economies and improvement in services to be anticipated from the operation of joint central services, (d) the adequacy of financial resources and sources of present and future revenues, (e) the availability of sufficient manpower in the several professional disciplines, and (f) such other factors as may be established by regulation. The commissioner shall cause appropriate surveys and studies to be made concerning the need for health care facilities and keep current records and statistics thereon by designated areas or regions of the State.
[5] See also 42 U.S.C.A. § 300n-1 (procedures and criteria for review of proposed health system changes).
[6] The affording of public hearings at the request of affected persons during the review process by the health systems agency, the Statewide Health Coordinating Council, and the State agency is required by 42 U.S.C.A. § 300n-1(b)(8).
[7] 42 U.S.C.A. § 300n-1(b)(10) requires "access by the general public to all applications reviewed by all component agencies in the review process" and "to all other written materials essential to any agency, State Agency, or statewide Health Coordinating Council review."
[8] For example, Morristown Memorial's brief says only that Beth Israel's filed submissions do not provide specific information to support its application claim that in 1983 an estimated nine patients waited in excess of four weeks for surgery dates. Morristown Memorial wants the patient waiting list. Its only other example of information it seeks which is not included in Beth Israel's submissions is its request from Beth Israel of "documents which reflect, refer, or relate to the impact, if any, upon the NBIMC cardiac surgical program of a cardiac surgical program at Morristown Memorial Hospital." Overlook claims that certain unspecified cost supporting data is not presently available.
[9] Although neither the statute, N.J.S.A. 26:2H-9, nor the regulation, N.J.A.C. 8:33-3.6(g) so states, we think it clear that the nature of the hearing is to review the reasonableness of the Commissioner's decision rather than to redetermine the issue of superiority among the batch applications de novo. This conclusion is implicit in the statutory requirement that the Commissioner's recommendation be supported by a statement of reasons and was also assumed by the National Nephrology court in its observation that the issue be tested by a hearing on the Commissioner's denial is essentially a legal one.