233 N.J. Super. 46 (1989)
558 A.2d 19
IN THE MATTER OF CERTIFICATION OF NEED ISSUED TO BLOOMINGDALE CONVALESCENT CENTER.
Superior Court of New Jersey, Appellate Division.
Argued March 14, 1989.
Decided May 4, 1989.
*47 Before Judges ANTELL, BROCHIN and CONLEY.
James V. Segreto argued the cause for appellant (Segreto & Segreto, attorneys; Erica J. Mandell, on the brief).
Michael J. Haas, Deputy Attorney General, argued the cause for respondent, State Commissioner of Health (Peter N. Perretti, Jr., Attorney General of New Jersey, attorney; Michael J. Haas, on the brief).
John J. Degnan argued the cause for respondent, Bloomingdale Convalescent Center (Shanley & Fisher, attorneys; John J. Degnan, on the letter brief).
The opinion of the court was delivered by BROCHIN, J.S.C. (temporarily assigned).
The New Jersey Commissioner of Health has issued a certificate of need for the establishment of the Bloomingdale Convalescent *48 Center, a nursing home for the long term care of up to 120 geriatric patients. The facility is to be located in the Borough of Bloomingdale, New Jersey, a community in a rural part of Passaic County, not far from Wanaque, New Jersey, where the applicant for the certificate is currently operating a nursing home under the name, Wanaque Convalescent Center. The certificate of need, which is a prerequisite for the establishment of the new nursing home, N.J.S.A. 26:2H-7, is conditioned upon the conversion of 120 general service beds at the Wanaque nursing home from long term general geriatric care to use for treatment of patients with Acquired Immune Deficiency Syndrome and AIDS Related Complex.
The Borough of Wanaque filed suit to enjoin the Wanaque facility from "receiving and treating any individuals afflicted with AIDS at the Wanaque Convalescent Center," and the Boroughs of Wanaque and Bloomingdale both appealed from the Commissioner's issuance of a certificate of need for the Bloomingdale Convalescent Center.
The Borough of Wanaque has settled its injunction suit and has withdrawn its notice of appeal. Although no AIDS or ARC patients are to be housed or treated in Bloomingdale, the Borough of Bloomingdale has pursued its appeal. Alleging that the Commissioner has failed to comply with pertinent statutes and with the applicable regulations of the Department of Health, the Borough of Bloomingdale asks us to reverse the issuance of the certificate of need for the establishment within its borders of a nursing home for the long term care of 120 general geriatric patients.[1] For the following reasons, we have *49 concluded that the Commissioner has deviated in material respects from the controlling statutes and from her own regulations, and we therefore reverse.
The Commissioner of Health has the authority to grant certificates of need. N.J.S.A. 26:2H-9; Application of Overlook Hosp., 215 N.J. Super. 401, 409 (App.Div. 1987); Nat. Nephrology Foundation v. Dougherety, 138 N.J. Super. 470, 474 (App.Div. 1976). But the Legislature has directed that "The commissioner shall recognize the Statewide Health Coordinating Council and the Health Systems Agencies as the recommending agencies in carrying out the purpose of this act and those functions prescribed to these agencies by Federal Law 93-641."[2]See N.J.A.C. 8.33-1.3(k) ("... the Health Systems Agencies and the Statewide Health Coordinating Council shall provide full consideration of each application submitted to them ...").
The regulations issued by the New Jersey Commissioner of Health provide that the Statewide Health Coordinating Council is to "act as the coordinating agency for the recommendations of the Health Systems Agencies and other State departments as necessary in all substantive review matters." N.J.A.C. 8:33-3.5(a). However, our State statutes and regulations do not describe the composition or function of the Council except by reference to the federal law which prompted its establishment. A section of that law, 42 U.S.C.A. § 300m-3 (repealed by *50 Pub.L. 99-660), provides that a Statewide Health Coordinating Council shall be composed of no fewer than sixteen representatives of health service agencies within the state and, in addition, representatives of consumers and providers of health care services, and other persons appointed by the governor. The functions prescribed for the Council by the federal statute are primarily policy making, relating to the preparation and revision of the State health plan.[3]
Our State statutes and regulations also refer to federal law for the meaning of "Health Systems Agency."[4] Omitting details and qualifications which are not relevant to our purpose, "health systems agency for a health service area" is defined by 42 U.S.C.A. §§ 300l-1 and 300l-2 (repealed by Pub.L. 99-660) as an entity, either a nonprofit private corporation, a public regional planning body or a local government unit whose area is coextensive with the health service area, whose "primary responsibility [is] the provision of effective health planning for its health service area and the promotion of the development within the area of health services, manpower, and facilities which meet identified needs, reduce documented inefficiencies, and implement the health plans of the agency." The pertinent New Jersey regulation describes the responsibilities of health service agencies in substantially similar terms,[5] but prescribes in greater detail their involvement in the process of submitting and considering applications for certificates of need. N.J.A.C. 8.33-3.9(a). For example, the regulation states that a health *51 systems agency has a responsibility for the "evaluation of the public need for each proposal with special consideration given to... the conformity of the proposal with locally developed criteria and guidelines for planning health facilities ... [and] the availability of alternate service programs."
So that the Statewide Health Coordinating Council and the health systems agencies can perform their assigned roles, the Legislature has directed that "Upon receipt of an application [for a certificate of need], copies thereof shall be referred by the department to the appropriate planning agencies or council for review," N.J.S.A. 26:2H-10, and "no decision shall be made by the commissioner contrary to the recommendations of the Statewide Health Coordinating Council or the Health Systems Agency concerning a certificate of need application ... unless the council and the Health Systems Agency ... shall have been granted [the] opportunity for [a] hearing," N.J.S.A. 26:2H-9. The Commissioner's regulations implement these statutory provisions by prescribing that before review of any application for a certificate of need, the Department of Health must give newspaper notice to the general public and direct written notice to the local Health Systems Agency, N.J.A.C. 8:33-3.4(a). There does not appear to be any regulation which explicitly requires notice to the Statewide Health Coordinating Council and, in the present case, the Council was not notified of Bloomingdale Convalescent Center's application and did not participate in its consideration.
The justification offered for omitting review by the Statewide Health Coordinating Council is that the application was approved after an "administrative review," a process established by N.J.A.C. 8:33-4.1 as a substitute for the "full review process." The "full review process" involves "the review of an application by the Health Systems Agency(ies) and the Statewide Health Coordinating Council as well as the Department of Health." N.J.A.C. 8:33-1.6. But an "administrative review" *52 does "not include the Statewide Health Coordinating Council."[6]N.J.A.C. 8:33-4.1. According to the regulation, an "administrative review" may be utilized in "emergency situations which demand rapid action," where the "Commissioner determines that flexibility of the review process is critical" and in a few other specific instances which are not pertinent to the present case. Ibid; N.J.A.C. 8:33-4.14(a); N.J.A.C. 8:33-2.11(a)(3)(iv).
The Commissioner's decision does not state why an "administrative review" was thought to be appropriate in this case. Perhaps the reason is that the Commissioner perceived that the need for longterm beds for AIDS patients had confronted the State with a health emergency, that the 120 AIDS beds promised at the Wanaque Convalescent Center will not be available until they can be replaced by the construction of the 120-bed Bloomingdale Convalescent Center, and that the health needs of New Jersey residents will be served by eliminating the time which would be required for review by the Statewide Health Coordinating Council.
Certainly the Commissioner has the expertise to make such a determination. However, the legislature has determined that the perspective of the Council is important to the review process, at least in most cases. See Application of Overlook Hosp., 215 N.J. Super. 401, 408-412 (App.Div. 1987). We should *53 not be left to wonder whether the Commissioner's decision to adopt an abbreviated process was the product of a considered judgment or of an inadvertence; and we should not be left to speculate about what considerations she concluded warranted expedited review or how she weighed those considerations against the legislative policy in favor of participation by the Statewide Health Coordinating Council. A reasoned statement of the basis for the Commissioner's determination is essential to the administrative process. N.J.A.C. 8:33-3.6(c) ("The Commissioner shall make his decision and supporting reasons in writing."); N.J.S.A. 52:14B-10(d); Riverside General v. N.J. Hosp. Rate Setting Com'n., 98 N.J. 458, 469-470 (1985); St. Vincent's Hospital v. Finley, 154 N.J. Super. 24, 29-33 (App.Div. 1977). See Application of Howard Savings Institution of Newark, 32 N.J. 29, 52-53 (1960).
Perhaps if the lack of a statement of reasons for the submission of the application of Bloomingdale Convalescent to "administrative review" were the only procedural defect in the present case, a reversal would not be required. Unfortunately, however, it is not. The regulations of the Commissioner of Health require notice to the Health Systems Agency of an application for a certificate of need, even in the case of an "administrative review." N.J.A.C. 8:33-4.1(c). However, that agency was not notified of the application of the Bloomingdale Convalescent Center. In view of the statutory scheme, that omission is particularly serious. The regulations of the Commissioner of Health recognize the importance to the review process of recommendations from local health systems agencies and they prescribe that a health systems agency has a specific responsibility for the "evaluation of the public need for each proposal ... with special consideration given to ... the conformity of the proposal with locally developed criteria and guidelines for planning health facilities ... [and] the availability of alternate service programs." N.J.A.C. 8.33-3.9(b). The opportunity for that input is essential in order to assure that, as directed by the statute, "No certificate of need shall be issued unless the action *54 proposed in the application for such certificate is necessary to provide required health care in the area to be served ... and will contribute to the orderly development of adequate and effective health care services." N.J.S.A. 26:2H-8.
The Commissioner of Health argues that the omission to notify the local health systems agency "was harmless error under the circumstances of this case" because that body "would have been under no obligation to conduct a substantive review of the application" in any event. However, that argument misses the point of the objection. The statutory scheme contemplates that the health services agency for the area affected by an application for a certificate of need will provide local input for the review process. Particularly in a case in which the Borough of Bloomingdale complains that the establishment of the proposed facility is not required to meet local needs, we cannot presume that, if notified of the submission of the Center's application, the Health Services Agency would have had nothing to add.
The Commissioner of Health must base her determination whether to issue a certificate of need upon the criteria prescribed by statute. N.J.S.A. 26:2H-1 and following. See Irvington General Hosp. v. Dept. of Health, 149 N.J. Super. 461 (App.Div.), certif. den. 75 N.J. 587 (1977). The pertinent statute directs that:
No certificate of need shall be issued unless the action proposed in the application for such certificate is necessary to provide required health care in the area to be served, can be economically accomplished and maintained, and will contribute to the orderly development of adequate and effective health care services.... [N.J.S.A. 26:2H-8]
In making the determinations required by the statute, the Commissioner must take into consideration:
(a) the availability of facilities or services which may serve as alternatives or substitutes, .... (d) the adequacy of financial resources and sources of present and future revenues, (e) the availability of sufficient manpower in the several professional disciplines, and (f) such other factors as may be established by regulation. [Ibid.]
*55 "Other factors" include the "applicant's prior track record" to be determined from recommendations of the Department of Health's Division of Health Facilities Evaluation, reports of the Department of Human Services, Division of Medical Assistance and Health Services, official records from other states and information from statewide patient advocacy groups, and similar organizations when available. See N.J.A.C. 8:33H-3.3.
The Commissioner's opinion does not show whether she has considered these statutory requirements or, if she has, what the basis is for her conclusions. For example, the only thing said in the opinion to show the need for the new facility is the following:
With the establishment of a program utilizing 120 beds at Wanaque Convalescent Center in Passaic County for the long-term care of patients with Acquired Immune Deficiency Syndrome and AIDS Related Complex, construction of the proposed Bloomingdale Nursing Home will result in the replacement of the long-term care beds for the geriatric population in Bergen/Passaic Counties. The Medicaid Waiting List for January 1988 indicated 183 patients awaiting nursing home placement in Bergen County.
We recognize that the Commissioner may base her decision on data collected by the Department of Health. See Merry Heart Nurs. & Conv. Home v. Dougherty, 131 N.J. Super. 412, 417-419 (App.Div. 1974). Perhaps because of her specialized information and expertise, she knows that a Medicaid Waiting List of 183 patients in January 1988 shows that there is a present shortage of beds and that the long-term beds, if any, which are not yet available, but for which certificates of need have been issued, are insufficient to eliminate the shortage. But, as with the finding of the existence of an emergency, unless the Commissioner tells us, and explains the basis for her reasoning, there is no way for this court to perform its constitutional function of reviewing her decision to ascertain that the applicable statutory requirements have been met for her issuance of a certificate of need to Bloomingdale Nursing Home. N.J.A.C. 8:33-3.6(c); N.J.S.A. 52:14B-10(d); Riverside General v. N.J. Hosp. Rate Setting Com'n., supra 98 N.J. at 469-470 (1985); St. Vincent's Hospital v. Finley, supra 154 N.J. Super. *56 at 29-33 (App.Div. 1977). See Application of Howard Savings Institution of Newark, supra 32 N.J. at 52-53 (1960).
We therefore reverse the decision of the Commissioner of Health which issued the certificate of need to the Bloomingdale Nursing Center and we remand the matter to the Commissioner for proceedings not inconsistent with this opinion.
NOTES
[1] Neither the Commissioner's brief nor that of Bloomingdale Convalescent Center argues that the Borough of Bloomingdale lacks standing to challenge the decision appealed from. However, the attorney for the Center raised that issue for the first time during his oral argument. Because the issue has not been briefed, we will not decide it. See Kelly v. Hackensack Meadowlands Develop. Comm'n., 172 N.J. Super. 223, 228 fn. 1 (App.Div. 1980). On the issue of standing, cf. Town of Milford v. Commissioner of Motor Vehicles, 139 Conn. 677, 96 A.2d 806 (1953) (The municipality has standing to appeal the Commissioner of Motor Vehicles' approval of a lease for a gasoline service station near a town park.); Board of Police Comm'rs. v. Reynolds, 86 R.I. 172, 133 A.2d 737 (1957) (The municipality has standing to obtain review of an order of the state liquor control administrator granting what the city believes would be an excessive number of liquor licenses within its borders.) But cf. Essex Cty. Welf. Bd. v. Dept. of Inst. & Agencies, 75 N.J. 232, cert. den. 437 U.S. 910, 98 S.Ct. 3103, 57 L.Ed.2d 1141 (1978); Tp. of Dover v. Bd. of Adj. of Tp. Dover, 158 N.J. Super. 401 (App.Div. 1978).
[2] 42 U.S.C.A. § 300k-1 et seq., repealed by Pub.L. 99-660, Title VII, § 701(a), Nov. 14, 1986.
[3] Since the New Jersey statute was enacted to comply with, and its language is based upon, the federal law, the federal act, although now repealed, continues to be helpful for the interpretation of our own law.
[4] 42 U.S.C.A. § 300k-1 et seq., repealed by Pub.L. 99-660, Title VII, § 701(a), Nov. 14, 1986.
[5] The names and addresses of the health systems agencies in New Jersey, which are listed in Exhibit 2 to N.J.A.C. 8.33, suggest that they consist of non-profit corporations and public regional planning bodies.
[6] There is no statute which expressly states that the Commissioner has the discretion not to give the Statewide Health Coordinating Council the opportunity to make recommendations about an application for a certificate of need for the construction of a nursing home. However, the fact that N.J.S.A. 26:2H-10 directs the Department of Health to send copies of an application for a certificate of need to "the appropriate planning agencies or council for review [emphasis added]" provides some support for omitting the Council from the review of some applications for certificates of need. More important, the structure and composition of the Council and the indication in the language of the federal statute and the State regulations that the Council's primary responsibility is intended to be long range planning and coordination provide sufficient basis for the Commissioner's determination that it should not participate in the review of some category of applications, those which are submitted to what the regulations denominate "administrative review."