# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. <u>R.</u> 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1362-20

D.H.,[1]

    Plaintiff-Respondent,

v.

T.B.,

    Defendant-Appellant.

_____

Submitted November 9, 2021 – Decided January 10, 2022

Before Judges Hoffman, Geiger and Susswein.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Burlington County, Docket No. FV-03-1094-21.

Hark & Hark, attorneys for appellant (Michael J. Collis, on the brief).

Respondent has not filed a brief.

PER CURIAM

---

[1] In accordance with <u>Rule</u> 1:38-3(d)(10), we identify the parties by initials.

Defendant T.B. appeals from the final restraining order (FRO) entered against her on January 12, 2021, pursuant to the Prevention of Domestic Violence Act (Act), N.J.S.A. 2C:25-17 to -35. We have carefully reviewed the record in view of the applicable legal principles and find that the trial court properly considered the relevant facts and circumstances. For the reasons that follow, we affirm.

I.

On January 4, 2021, plaintiff D.H. filed a domestic violence complaint and obtained a temporary restraining order (TRO) against defendant based upon events that occurred over the previous weeks. On January 12, 2021, a trial on the FRO was held, during which plaintiff and defendant both testified.

We derive the following facts from the record. Plaintiff and defendant were involved in a romantic relationship between March and December 2020. Both plaintiff and defendant work as parole agents for the Commonwealth of Pennsylvania. On December 26, 2020, defendant called plaintiff "over thirty times" and showed up to her house unannounced and uninvited. At the time, plaintiff was at her home with another female friend.

Plaintiff testified that December 27, 2020, was a "relatively normal day" and that defendant apologized for her actions on the 26th. On December 28,

A-1362-20

2020, plaintiff found defendant's phone in plaintiff's car. According to plaintiff, the parties then exchanged a few "back and forths" regarding the return of the cell phone, culminating in defendant "freaking out," and calling their employer to state that plaintiff had her phone and was not returning it. Plaintiff subsequently met with defendant and returned the phone. Upon return of the phone, plaintiff received a text message from defendant stating that "[plaintiff] could be dead to her." According to plaintiff, she took this to mean the relationship was over.

Later that day, on December 28th, plaintiff found that her car tires had been slashed. Plaintiff informed her work supervisor, and together they viewed a security video of the incident. The footage was not produced at trial; however, plaintiff testified that, while viewing the video, she saw defendant kneeling down around her tires.

On December 30, 2020, plaintiff and defendant exchanged text messages discussing the tire slashing incident. Defendant wrote "I apologize Dia. You'll have your . . . money by Monday." Plaintiff submits that defendant's apology and offer to pay, coupled with the lack of an express denial, constitutes an admission. Notwithstanding her apology and offer to pay, defendant testified that she did not slash plaintiff's tires.

A-1362-20

On January 4, 2021, following the tire slashing incident, a workplace meeting was held between defendant and her supervisor. After the meeting, plaintiff received phone calls and text messages from defendant; in one text message, defendant stated "[y]ou think you're funny bitch? My job? Let's play." In addition, defendant returned to plaintiff's house unannounced, walked up to plaintiff's front door, and knocked. Based on these developments, plaintiff decided to seek a restraining order.

At the conclusion of the FRO trial, the judge found that plaintiff was more credible than defendant with respect to the tire slashing incident and concluded that defendant committed the predicate acts of harassment and criminal mischief. The judge found a "legitimate inference" could be made that defendant slashed plaintiff's tires. In addition, the judge found that an FRO was necessary to prevent further abuse.

The judge explained that he did not afford much weight to plaintiff's characterization of the security video; however, he found that defendant's text messages, in which defendant apologized and offered to pay for the tires, were "damning" and allowed him to infer that defendant slashed plaintiff's tires. The judge ultimately found the tire slashing to constitute a "clear escalation" in the relationship and demonstrated an intent to harass. This appeal followed.

4

On appeal, defendant contends that plaintiff failed to prove the necessary elements of the predicate act of harassment. Namely, defendant argues there is no evidence showing that defendant's conduct was purposeful or intentional. Defendant also argues that the trial judge abused his discretion in finding that the FRO was necessary to prevent further abuse.

We begin our consideration of defendant's arguments by acknowledging the legal principles governing this appeal. Our review is limited when considering an FRO issued by the trial judge. We must "accord substantial deference to Family Part judges, who routinely hear domestic violence cases and are 'specially trained to detect the difference between domestic violence and more ordinary differences that arise between couples."' C.C. v. J.A.H., 463 N.J. Super. 419, 428 (App. Div. 2020) (quoting J.D. v. M.D.F., 207 N.J. 458, 482 (2011)).

Moreover, "[d]eference is especially appropriate 'when the evidence is largely testimonial and involves questions of credibility.'" Cesare v. Cesare, 154 N.J. 394, 412 (1998) (quoting In re Return of Weapons to J.W.D., 149 N.J.108, 117 (1997)). The trial court "has a better perspective than a reviewing court in evaluating the veracity of witnesses" because the "trial court hears the

case, sees and observes the witnesses, [and] hears them testify." Ibid. (alteration in original) (quoting Pascale v. Pascale, 113 N.J. 20, 33 (1998)) (internal quotation marks omitted). Accordingly, we will not disturb the factual findings of the trial judge unless they are so "manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice." C.C., 463 N.J. Super at 428 (quoting S.D. v. M.J.R., 415 N.J. Super. 417, 429 (App. Div. 2010)).

The Prevention of Domestic Violence Act (the Act) authorizes courts to issue restraining orders against a person "after a finding . . . is made that an act of domestic violence was committed by that person." N.J.S.A. 2C:25-29(a). An FRO may issue if two criteria are met. Silver v. Silver, 387 N.J. Super. 112, 125 (App. Div. 2006). The plaintiff seeking the FRO must prove, by a preponderance of the evidence, that (1) "one or more of the predicate acts set forth in N.J.S.A. 2C:25-19(a) has occurred"; and (2) that the order is necessary to protect plaintiff from immediate danger or to prevent further abuse. Id. at 125, 127.

Harassment, prohibited by N.J.S.A. 2C:33-4, constitutes a predicate act of domestic violence. N.J.S.A. 2C:25-19(a)(13); J.D., 207 N.J. at 475. Under the

Act, a person commits the predicate act of harassment "if, with purpose to harass another," he or she:

> a. Makes, or causes to be made, a communication or communications anonymously or at extremely inconvenient hours, or in offensively coarse language, or any other manner likely to cause annoyance or alarm;
>
> b. Subjects another to striking, kicking, shoving, or other offensive touching, or threatens to do so; or
>
> c. Engages in any other course of alarming conduct or of repeatedly committed acts with purpose to alarm or seriously annoy such other person.
>
> [N.J.S.A. 2C:33-4.]

"A finding of a purpose to harass may be inferred from the evidence presented," informed by "[c]ommon sense and experience[.]" State v. Hoffman, 149 N.J. 564, 577 (1997). "[W]hether a particular series of events rises to the level of harassment or not is fact-sensitive." J.D., 207 at 484.

Guided by these principles, we find no error in the trial judge's determination that defendant committed the predicate act of harassment. The judge found that defendant engaged in repeated conduct meant to alarm or seriously annoy plaintiff. See N.J.S.A. 2C:33-4(c). The judge's finding that defendant acted with a purpose to harass was based on his assessment of

7

defendant's credibility and the parties' testimony. Furthermore, the judge reasonably inferred that defendant slashed plaintiff's tires, based on defendant's apology and offer to pay for the tires.

In addition, the trial judge found that defendant's repeated text messages and phone calls, along with showing up at plaintiff's home unannounced, demonstrated an intent to harass. Considering our deference to findings based largely on testimonial evidence and issues of credibility, we discern no basis to disturb the judge's determination that defendant harassed plaintiff. See Cesare, 154 N.J. at 412.

Of note, defendant does not challenge the trial judge's finding that the act of slashing plaintiff's tires constituted criminal mischief. Since defendant has not offered any argument regarding the criminal mischief finding, we deem the issue waived. See In re Bloomingdale Convalescent Ctr., 233 N.J. Super. 46, 48 n.1 (App. Div. 1989) (the court will not decide an issue not briefed).

Defendant next contends that the trial judge abused his discretion in finding that the FRO was necessary to prevent further abuse. Defendant maintains that plaintiff failed to tell defendant to "stop texting her, calling her, or showing up at her house," and that if she had done so, defendant would have stopped.

A-1362-20

If a predicate act has been proven, the court must next determine whether a restraining order is necessary for plaintiff's protection. C.C., 363 N.J. Super. at 429 (citing J.D., 207 N.J. at 475-76). When evaluating the necessity of an FRO, the issuing court, "must at least consider" the parties' history of domestic violence, although such a history is not a prerequisite for issuing an FRO. Cesare, 154 at 402.

Here, the trial judge found that defendant engaged in a "pattern of escalation," specifically through repeated phone calls, text messages, slashing of plaintiff's car tires, and showing up at plaintiff's house. The judge considered the absence of a domestic violence history between plaintiff and defendant, but also acknowledged that there was a history of "domestic contretemps," stating that "when it's good, it's good, when it's not good, it's not good." Although not reaching the level of "domestic violence," the judge appropriately found that based on the parties' contentious history, culminating in defendant slashing plaintiff's tires, plaintiff required protection to prevent further abuse.

Moreover, defendant's contention that – had plaintiff asked defendant to stop interacting with her, she would have stopped – is meritless and unconvincing. As the trial judge explained, plaintiff did not have to "spell out" that she did not want defendant around, after ignoring upwards of thirty phone

9                                                                    A-1362-20

calls and text messages sent by defendant. We conclude that the need for an FRO to prevent further abuse was clear, given the escalating nature of defendant's actions.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1362-20