**DELAWARE VALLEY TRANSPLANT PROGRAM, Veronica Durkin, Marianne Fletcher, Glenn Miller, Joyce Battle, Plaintiffs,**

v.

**Molly Joel COYE, M.D., M.P.H. Commissioner, State of New Jersey, Department of Health, Defendant,**

and

**New Jersey Organ and Tissue Network, Intervenor.**

**Civ. A. No. 88–0548(SSB).**

United States District Court, D. New Jersey.

Oct. 16, 1989.

Gary J. Lesneski and Deborah H. Simon, Archer & Greiner, P.C., Haddonfield, N.J., for plaintiffs.

Office of the Atty. Gen. of New Jersey by Michael J. Haas, Deputy Atty. Gen., Div. of Law, Trenton, N.J., for defendant.

Murray J. Klein and Robert Ross, Cohen, Shapiro, Polisher, Shiekman and Cohen, Lawrenceville, N.J. and Judah I. Labovitz, Cohen, Shapiro, Polisher, Shiekman and Cohen, Philadelphia, Pa., for intervenor.

BROTMAN, District Judge.

Presently before the court are the motion of Intervenor New Jersey Organ and Tissue Sharing Network ["Network"] for summary judgment and the cross-motion of Plaintiff Delaware Valley Transplant Program ["DVTP"] for summary judgment on Network's counterclaims. Defendant Molly Joel Coye, Commissioner of the New Jersey Department of Health [the "Commissioner"], has filed a brief in support of Network's motion for summary judgment.

These motions present difficult issues involving interjurisdictional preclusion, the full faith and credit statute, 28 U.S.C. § 1738 (1982), the Eleventh Amendment, and the federal abstention doctrines. *See Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971); *Railroad Commission of Texas v. Pullman*, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941).

## I. FACTS AND PROCEDURE

In 1984, the federal government[1] organized the Task Force on Organ Transplantation to file a report with the Secretary of Health and Human Services.[2] The Task Force studied the medical, legal, ethical, economic and social issues presented by

---

1. The National Health Planning and Resources Development Act of 1974, Pub.L. No. 93–641, 88 Stat. 2225 (1975), codified at 42 U.S.C. § 300k *et seq.* (1982) provides the federal backdrop to the state regulation at issue here. *See National Gerimedical Hospital and Gerontology Center v. Blue Cross of Kansas City*, 452 U.S. 378, 383–88, 101 S.Ct. 2415, 2419–22, 69 L.Ed.2d 89 (1981). There is no need to discuss the federal legislation, however, as it has no direct bearing on the resolution of the motions before the court.

2. Some of the facts as developed at an earlier stage of this litigation are set forth in this court's opinion of February 3, 1988. *Delaware Valley Transplant Program v. Coye*, 678 F.Supp. 479 (D.N.J.1988). Only those facts, as taken from the briefs and the Joint Final Pretrial Order, that are necessary for an understanding of the instant motions are set forth herein.

human organ procurement and transplantation, and filed its report in April, 1986. One of the issues addressed was the effectiveness of "organ procurement agencies" ["OPAs"] such as DVTP and Network. The Task Force observed that competition was often damaging to the organ procurement process, and further noted that because "large OPAs are more effective than small ones, amalgamating several small agencies operating in an area would improve organ procurement." The Task Force also noted that OPAs that became too large were also ineffective.

In August 1986, the Commissioner appointed a statewide task force to make a similar report concerning:

I. The consolidation and coordination of transplant organ retrieval in the State;

II. The equitable allocation of donated organs among transplant centers and patients; [and]

III. The equitable accessibility of transplantation and subsequent drug therapy to all medically qualified patients.

Pretrial Order at 12. At this time there were three New Jersey-based OPAs: Transplant Foundation of New Jersey, Northern New Jersey Organ Procurement Program, and Our Lady of Lourdes Medical Center. Transplant Foundation and Northern New Jersey Organ Procurement both served the northern New Jersey area, while Our Lady of Lourdes served southern New Jersey along with DVTP, the only non-New Jersey-based OPA. In early 1987 Transplant Foundation and Northern New Jersey Organ Procurement Program merged; the combined organization, the defendant Network, received a Certificate of Need ("CON") conditioned on its filing an application to become the sole statewide OPA.[3] Pretrial Order at 28.

In August, 1987, the state task force issued a draft report. In September, 1987, Network filed an application for a CON.

Pursuant to the New Jersey statutory scheme, all potential affected persons were notified, including DVTP, and advised that they would be able to make a presentation to the appropriate state agency. By November, Network had entered into a preliminary agreement to merge with Our Lady of Lourdes, the remaining New Jersey-based OPA.

Also at this time, DVTP made efforts to obtain a hearing on the propriety of issuing a CON to Network. Pretrial Order at 37, 41. DVTP was informed that Network was trying to consolidate into "a single statewide organ retrieval agency for the state through the integration of Our Lady of Lourdes Medical Center's organ procurement and transplant program." Pretrial Order at 36. As a transfer of ownership, the New Jersey Statewide Health Coordinating Council took the position that the application satisfied the "criteria for administrative review." Pretrial Order at 36. DVTP was further informed that "[i]t has been our policy not to conduct a public review of applications in administrative review because there is no forum at the state level to where our views would be considered." Pretrial Order at 38. See Pretrial Order at 41 (the "Regulation and Statutes do not afford [DVTP] the right to this procedure [a hearing]"); id. at 42. DVTP did, however, provide statistical evidence and comments that were discussed at the December meeting of the Statewide Health Coordinating Council. Pretrial Order at 41. Subsequently, a Certificate of Need Analyst reviewed Network's application and recommended that it be granted. The Assistant Commissioner reviewed the recommendation before forwarding it to the Commissioner.

This controversy centers on the Commissioner's decision on January 27, 1988, to grant a CON to Network to act as "an independently organized statewide organ retrieval agency for New Jersey." Pretrial Order at 42. The parties vigorously disputed whether the CON granted Network

---

**3.** The New Jersey Health Care Facilities Planning Act, 26 N.J.Stat.Ann. § 26:2H–1 et seq. (West 1987 & Supp.1989) provides that "[n]o health care facility shall be constructed or expanded, and no new health care services shall be instituted after the effective date of this act except upon application for and receipt of a certificate of need...." Id. § 26:2H–7.

the exclusive right to act as an OPA within New Jersey. To a large extent, that dispute continues.

On January 29, 1989, plaintiffs[4] filed suit in the federal district court for the District of New Jersey claiming that: (1) the Commissioner's issuance of the CON to Network violates plaintiffs' rights of interstate travel, equal protection, and substantive due process; (2) the Commissioner's actions are inconsistent with and preempted by federal regulations; and (3) the Commissioner's designation violates the Commerce Clause. Soon thereafter, Network intervened.

On February 3, 1988, after concluding that DVTP had made the required showing, this court preliminarily enjoined the Commissioner from implementing her decision designating Network as the sole OPA for the State of New Jersey pending the final outcome of this litigation, or until such other time as the court might so direct. *Delaware Valley Transplant Program,* 678 F.Supp. at 483. Soon thereafter, Network filed a counterclaim seeking to stop DVTP from operating in New Jersey because it did not have a CON. Network also included a claim of tortious interference relating to two organ procurements by Network, one at the William B. Kessler Memorial Hospital in April, 1987, and the other at Helene Fuld Medical Center in June, 1987.

On March 11, 1988, DVTP instituted a related action in the New Jersey Superior Court, Appellate Division, against the Commissioner and Network.[5] The papers filed in the New Jersey proceeding informed the state court of the pending federal action and stated that DVTP had commenced the action "to preserve certain issues of state law which cannot be adjudicated in the federal action." Although DVTP apparently sought a stay in the state court proceeding to allow for the development of a factu-al record in the federal proceeding, the state court declined to grant the stay, and on July 12, 1989, the New Jersey Superior Court affirmed the issuance of the CON. *Delaware Valley Transplant Program v. Molly J. Coye, M.P.H., Commissioner, State of New Jersey Department of Health, and New Jersey Organ and Tissue Sharing Network, Inc.,* No. A–3108–87T7 (N.J.Super.Ct.App.Div. July 12, 1989) (per curiam).

DVTP's position throughout the litigation has been that the Commissioner's decision to authorize Network as the sole statewide OPA is an impermissible protectionist effort to assure that organs retrieved from patients in New Jersey hospitals are used only for in-state transplants. *Delaware Valley,* 678 F.Supp. at 481. Essentially, DVTP argues that the Commissioner and Network acted to consolidate the relatively small New Jersey-based OPAs into one large statewide OPA out of fear that, as a result of the federal government Task Force's recommendation that small OPAs be merged into larger regional OPAs which operate more efficiently, the northern New Jersey OPAs would be coopted into a single New York metropolitan area OPA while the southern New Jersey OPAs would be merged into a Philadelphia metropolitan OPA. Network's position, as well as that of the Commissioner, is that the merger of the three New Jersey based OPAs is not a protectionist measure but is intended only to make the transplant procurement process more efficient. Network and the Commissioner claim that any effort to limit the organizations that may procure organs in no way restricts the organizations that may receive organs.

Network has now moved for summary judgment in this court and claims that the state court determination collaterally estops DVTP from pursuing its claim in the federal action. The Commissioner sup-

---

**4.** When the suit was originally filed, Veronica Durkin, Marianne Fletcher, Glenn Miller, and Joyce Battle were plaintiffs, and apparently they continue to be plaintiffs in the suit.

**5.** DVTP was required to commence the parallel state proceeding because this court lacked juris-diction under the Eleventh Amendment to hear an action seeking injunctive relief against a state official on the basis of state law. *Pennhurst State School & Hospital v. Halderman,* 465 U.S. 89, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984).

ports Network's motion, although the Commissioner additionally relies on the doctrine of *res judicata*.[6] DVTP, on the other hand, denies that Network is entitled to summary judgment on either ground and moves for summary judgment on Network's counterclaims. Network opposes DVTP's motion for summary judgment and asserts that it is untimely and that Network may maintain a common law action for unfair competition. Despite the court's express invitation, the Commissioner takes no position as to the legal issues involved in the counterclaims.

## II. DISCUSSION

The standard for granting summary judgment is a stringent one. A court may grant summary judgment only when the materials of record "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *see Hersh v. Allen Prods. Co.*, 789 F.2d 230, 232 (3d Cir.1986); *Lang v. New York Life Ins. Co.*, 721 F.2d 118, 119 (3d Cir.1983). In deciding whether there is a disputed issue of material fact the court must view all doubt in favor of the non-moving party. *Meyer v. Riegel Prods. Corp.*, 720 F.2d 303, 307 n. 2 (3d Cir.1983), *cert. dismissed*, 465 U.S. 1091, 104 S.Ct. 2144, 79 L.Ed.2d 910 (1984); *Smith v. Pittsburgh Gage & Supply Co.*, 464 F.2d 870, 874 (3d Cir.1972). The threshold inquiry is whether there are "any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986).

Recent Supreme Court decisions mandate that "a motion for summary judgment

must be granted unless the party opposing the motion can produce evidence which, when considered in light of that party's burden of proof at trial, could be the basis for a jury finding in that party's favor." *J.E. Mamiye & Sons, Inc. v. Fidelity Bank*, 813 F.2d 610, 618 (3d Cir.1987) (Becker, J., concurring) (citing *Anderson*, 477 U.S. 242, 106 S.Ct. 2505, and *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). Moreover, once the moving party has carried its burden of establishing the absence of a genuine issue of material fact, "its opponent must do more than simply show that there is some metaphysical doubt as to material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). Thus, if the non-movant's evidence is merely "colorable" or is "not significantly probative," the court may grant summary judgment. *Anderson*, 477 U.S. at 249–50, 106 S.Ct. at 2510–11.

### A. PRECLUSION

A defense of claim or issue preclusion is one appropriate for summary judgment, because it calls for a legal determination by the court rather than a factual determination by a jury. *See John M. Peduto and El–Ro, Inc. v. City of North Wildwood*, 878 F.2d 725 (3d Cir.1989); *Purter v. Heckler*, 771 F.2d 682, 690 (3d Cir.1985); *Scooper Dooper, Inc. v. Kraftco Corp.*, 494 F.2d 840 (3d Cir.1974).

It is now well established that "a federal court must give to a state court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was entered." *Migra v. Warren City School Dist. Bd. of Educ.*, 465 U.S. 75, 81, 104 S.Ct. 892, 896, 79 L.Ed.2d 56 (1984); *Peduto*, 878 F.2d at 728. *Accord Allen v. McCurry*, 449 U.S.

---

**6.** Although some courts have found the doctrines of *res judicata* and collateral estoppel so intertwined as to be inseparable, *see Purter v. Heckler*, 771 F.2d 682, 689 n. 5 (3d Cir.1985), in this case, at least, each doctrine has a distinct application. In relying on *res judicata,* the Commissioner asserts that the federal constitutional claims were brought or should have been brought in the state court proceeding, and that

the state court judgment precludes litigating those claims in federal court. Network relies on collateral estoppel and claims that the state court holding that Network's CON does not exclude others precludes relitigation of that issue here, and that DVTP's constitutional claims must fail because they are predicated on some finding of exclusivity.

90, 96, 101 S.Ct. 411, 415–16, 66 L.Ed.2d 308 (1980); 28 U.S.C. § 1738 (1982). In *Kremer v. Chemical Constr. Corp.*, 456 U.S. 461, 466, 102 S.Ct. 1883, 1889, 72 L.Ed.2d 262 (1982), the Supreme Court held that a federal court must give the same preclusive effect to a state court review of an agency decision as would be given in that state's courts. Here, the prior state court proceeding occurred first in the form of an administrative review before the Statewide Health Coordinating Council, the Certificate of Need Analyst, the Assistant Commissioner and the Commissioner, and on appeal before the New Jersey Superior Court, Appellate Division. Therefore the law of preclusion that a New Jersey court would apply controls this court's decision.

The relatively unique procedural posture of this case is one that New Jersey preclusion law is unlikely ever to confront. This case poses the question, what is the preclusive effect of a state court judgment on a prior commenced federal action where the plaintiff could not have brought the entire suit in the federal court because of the Eleventh Amendment limitation to the subject matter jurisdiction of the federal courts. *See supra* n. 5. The New Jersey "entire controversy" doctrine may force a plaintiff who wishes her case to be heard in federal court to win the race to the courthouse. *See Peduto*, 878 F.2d at 729 n. 5. This case further asks whether the plaintiff must additionally win the race *through* the court house to have her federal claims heard in the federal court.

This court faced a similar issue of interjurisdictional preclusion in *John M. Peduto and El–Ro, Inc. v. City of North Wildwood*, 696 F.Supp. 1004 (D.N.J.1988), *aff'd*, 878 F.2d 725 (3d Cir.1989). That case involved plaintiffs who brought an inverse condemnation proceeding in state court before bringing a civil rights claim under 42 U.S.C. § 1983 (1982) in federal court. The Third Circuit held that where the state court's jurisdiction was invoked in the first instance, the New Jersey entire controversy doctrine required the plaintiffs to bring the entire case in the state court. Relying on *Allen v. McCurry*, 449 U.S. 90, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980), the Third Circuit held that although the operation of New Jersey preclusion law and federal takings jurisprudence required that the plaintiff bring the federal constitutional claims in state court, the "[d]enial of a federal forum, however, does not amount to denial of due process." *Peduto*, 878 F.2d at 729.

In *Peduto* this court declined to fashion a federal common-law exception to Section 1738. 696 F.Supp. at 1011, *aff'd*, 878 F.2d 725 (3d Cir.1989). Here, if such a common law exception were to be constructed, it would have to be founded on the Eleventh Amendment and the due process clause.[7] In framing Section 1738, Congress could not have foreseen its application to the instant situation. Section 1738 was adopted in its original form in 1790. *See* Burbank, *Interjurisdictional Preclusion, Full Faith and Credit, and Federal Common Law: A General Approach*, 71 Cornell L.Rev. 733, 740 (1986). The Eleventh Amendment was not ratified until 1798, largely in response to the United States Supreme Court decision in *Chisholm v. Georgia*, 2 U.S. 419 (2 Dall.), 1 L.Ed. 440 (1793). *See* C. Wright, Federal Courts § 48, at 206 (2d ed. 1976); *Smith, Pennhurst v. Halderman: The Eleventh Amendment*, Erie, *and Pendent State Law Claims*, 34 Buffalo L.Rev. 227, 245–50 (1985).

Similarly, the difficult situation facing this court is probably one not anticipated by the framers of the Eleventh Amendment. Only as recently as 1984 did the Supreme Court make clear in *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984), that the state court claims in the instant case could be brought only in the

---

7. The complaint states claims for constitutional violations and invokes federal jurisdiction based on 42 U.S.C. § 1983 (1982). The Supreme Court has held that § 1983 is not an implied or partial repeal of § 1738. *Migra v. Warren City School Dist. Bd. of Educ.*, 465 U.S. 75, 83–84, 104 S.Ct. 892, 897–98, 79 L.Ed.2d 56 (1984) (claim preclusion); *Allen v. McCurry*, 449 U.S. 90, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980) (issue preclusion). Thus, any such implied or partial repeal would have to be founded directly on the constitutional provisions.

state court.[8] Although there might be some tenuous basis for finding that the Eleventh Amendment together with the due process clause are an express or implied repeal of Section 1738, *see Kremer*, 456 U.S. at 481–82, 102 S.Ct. at 1897–98; Burbank, *Interjurisdictional Preclusion, Full Faith and Credit, and Federal Common Law: A General Approach*, 71 Cornell L.Rev. 733, 797–98 (1986), this court adheres to the well-established principle that a court should avoid an unnecessary constitutional determination. *See Lake Carriers Ass'n v. MacMullan*, 406 U.S. 498, 510, 92 S.Ct. 1749, 1757, 32 L.Ed.2d 257 (1972); *Railroad Comm'n v. Pullman Co.*, 312 U.S. 496, 498, 61 S.Ct. 643, 644, 85 L.Ed. 971 (1941); *Burton v. United States*, 196 U.S. 283, 295, 25 S.Ct. 243, 245, 49 L.Ed. 482 (1905). Rather than wade into the constitutional abyss, this court will follow the path of New Jersey preclusion law. *See Marrese v. American Academy of Orthopaedic Surgeons*, 470 U.S. 373, 105 S.Ct. 1327, 84 L.Ed.2d 274 (1985).

### 1. *Res Judicata*

■ As the Supreme Court has observed, "[u]nder res judicata, a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Allen v. McCurry*, 449 U.S. 90, 94, 101 S.Ct. 411, 414, 66 L.Ed.2d 308 (1980). *See Purter*, 771 F.2d at 690

(citing *United States v. Athlone Indus., Inc.*, 746 F.2d 977, 983 (3d Cir.1984)). The New Jersey entire controversy doctrine requires that " 'a party who has *elected* to hold back from the first proceeding a related component of the controversy be barred from thereafter raising it in a subsequent proceeding.' " *Peduto*, 878 F.2d at 727 (emphasis added) (quoting *Woodward–Clyde Consultants v. Chemical and Pollution Sciences, Inc.*, 105 N.J. 464, 473, 523 A.2d 131, 135 (1987)).

There is a substantial question as to whether DVTP *elected* not to bring the federal claims in the state proceeding because it is not clear that the federal claims could have been brought in the state proceeding.[9] This determination requires an evaluation of whether the state court had the power to hear the claims. *Cf. Fay v. South Colonie Central School Dist.*, 802 F.2d 21, 29 (2d Cir.1986) (New York *res judicata* law did not preclude subsequent action in federal court where state court lacked power to adjudicate claim) (citing *Davidson v. Capuano*, 792 F.2d 275, 278 (2d Cir.1986)); Restatement (Second) of Judgments § 26(c) and Comment (c)(1).[10]

The Health Care Facilities Planning Act, 26 N.J.Stat.Ann. § 26:2H–1 *et seq.* (West 1987 & Supp.1989), states that no CON "shall be denied without the approval of the [Health Care Administration] board and

8. *Pennhurst* itself recognized that one consequence of "applying the Eleventh Amendment to pendent state claims [may result] in federal claims being brought in state courts, or in bifurcation of claims." 465 U.S. at 122, 104 S.Ct. at 919. The Court noted that the splitting of claims was not uncommon in this area because of the frequent application of the abstention doctrines, and found that the constitutional mandate outweighed the judicial concerns of efficiency. *Pennhurst* did not consider the risks of having the federal claims completely barred by *res judicata* should the state court decide its case first, *see* Chemerinsky, *State Sovereignty and Federal Court Power: The Eleventh Amendment After* Pennhurst v. Halderman, 12 Hastings Const. L.Q. 643, 658–59 (1985), a risk that is all the more considerable in light of the mandate of § 1738. *See* Smith, Pennhurst v. Halderman: *The Eleventh Amendment,* Erie *and Pendent State Law Claims*, 34 Buffalo L.Rev. 227, 278–80 (1985) ("It will be the rare case in which claim preclusion can be avoided

when federal and state claims are split and the state suit goes to judgment first.").

9. The parties in the state and federal litigations are identical. Similarly the New Jersey Superior Court decision is a final judgment for purposes of claim preclusion. *See* Restatement (Second) of Judgments § 26 and Comment f; *Connelly v. Wolf, Block, Schorr and Solis–Cohen*, 463 F.Supp. 914, 918 n. 3 (E.D.Pa.1978) (applying New York law). Although certification is pending before the New Jersey Supreme Court, there is no need for this court to abstain pending the New Jersey Supreme Court's deliberations, because of this court's resolution of the preclusion issues.

10. The brief filed on behalf of the Commissioner who raises the claim of *res judicata* is of virtually no help in this inquiry. It cites only one case applying New Jersey law, and in that case there was no distinction drawn between *res judicata* and collateral estoppel.

prior to the determination by the board, the *applicant* shall have been granted opportunity for hearing...." *Id.* § 26:2H–9 (emphasis added). The statute makes no specific provision for a hearing when the board has decided to issue a CON. *Cf.* N.J.Admin.Code tit. 8, § 33–3.6(f) (applicant entitled to hearing if Commissioner disapproves CON application). Further, the statute makes no provision for a hearing for a non-applicant who may take some position as to the issuance or denial of a CON to the applicant.

The court finds that DVTP did not *elect* not to present its constitutional claims in the state proceeding. To the contrary, DVTP sought repeatedly to present factual evidence in an open and public hearing. At every turn, however, DVTP's efforts were frustrated. The Statewide Health Coordinating Council informed DVTP "that a full review was not necessary and that the administrative review process was appropriate." Pretrial Order at 42. The minutes of the Statewide Health Coordinating Council further state that DVTP "requested a hearing, but the Regulation and Statutes do not afford [DVTP] the right to this procedure." Pretrial Order at 41.

DVTP was not entitled to such a public hearing at any point in the state proceedings as a matter of state law. The determination whether to submit an application to the administrative review process rests with the Department of Health. N.J.Admin.Code tit. 8, § 33–4.1(f). The administrative code provides that the administrative review process shall be the process for obtaining a CON in the case of a transfer of ownership between existing health care facilities. *Id.* § 2.10(b). The consolidation of Network and Our Lady of Lourdes was considered a transfer of ownership. Pretrial Order at 36. Accordingly, the Commissioner's decision was reviewable only by the Department of Health, and the administrative review "process is generally of shorter duration than the full review process and normally does not include a review by the Statewide Health Coordinating Council. N.J.Admin.Code tit. 8, § 33–1.6. There is no provision for a plenary public hearing, *see id.* § 4.2, and the Department

of Health determination is then the final determination of the state agency, unless the matter is remanded. *Id.* § 3.6(i). The Department of Health decision is reviewable only in the Superior Court Appellate Division. N.J.R.Ct. 2:2–3(a)(2) (1989).

The New Jersey Superior Court Appellate Division's review of the Commissioner's issuance of the CON similarly failed to afford DVTP a full and fair opportunity to present its claims. In New Jersey, courts have a limited role in reviewing agency decisions. *Henry v. Rahway,* 81 N.J. 571, 579, 410 A.2d 686, 690 (1980). An appellate court will not reverse the decision of an administrative agency unless it is arbitrary, unreasonable, capricious, lacks fair support in the evidence, or violates legislative policies. *See Campbell v. Department of Civil Serv.,* 39 N.J. 556, 563, 189 A.2d 712, 715 (1963). The Appellate Division has jurisdiction only to review the agency decision and cannot entertain new claims for the first time on appeal. *See* N.J.R.Ct. 2:2–3(a)(2) (1989).

The closest case to the facts of the instant case is *In re the Applications of Overlook Hospital and Morristown Memorial Hospital For Certificate of Need,* 215 N.J.Super. 401, 414, 521 A.2d 1350, 1356 (1987), in which rejected applicants sought review of the Commissioner's decision not to issue a CON to them although a CON had been issued to another applicant hospital. There the New Jersey Superior Court held that the rejected applicants were not entitled to introduce evidence from beyond the face of the application of the successful hospital, although the rejected applicants were entitled to a more complete development of the record for the purposes of reviewing the denial of their applications.

In this instance, DVTP was not in a batched application pool, as were the rejected applicants in *Applications of Overlook Hospital;* had that been the case there might have been a more complete hearing concerning the issuance of Network's CON. N.J.Admin.Code tit. 8, § 33–3.6(f). More importantly, there might have been an opportunity for DVTP to pursue the

very claims it seeks to press in this action. Moreover, DVTP had not applied for a CON and therefore could not introduce evidence not previously considered by Statewide Health Coordinating Council.

This extended recitation of the proceedings in New Jersey is not meant in any way to undermine this court's obligation to respect the state court's determination of the state law issues present in this case. *Erie v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938); 28 U.S.C. § 1738 (1982). Rather, the review of the state procedures demonstrates that DVTP was not afforded the opportunity to pursue its federal claims.

Under New Jersey law of claim preclusion, if the claim was one that could not have been brought, it cannot be precluded. *Peduto*, 878 F.2d at 727. New Jersey follows the Restatement (Second) of Judgments. *See Gareeb v. Weinstein*, 161 N.J. Super. 1, 9–10, 390 A.2d 706, 710 (App.Div. 1978). *Accord Jalil v. Avdel Corp.*, 873 F.2d 701, 704 (3d Cir.1989) (New Jersey follows Restatement for issue preclusion). Section 26 of the Restatement sets forth several exceptions to the general rule that second action on the same claim is barred, one of which is relevant to the facts here:

> The plaintiff was unable to rely on a certain theory of the case or to seek a certain remedy of form of relief in the first action because of the limitations on the subject matter jurisdiction of the courts or restrictions on their authority to entertain multiple theories or demands for multiple remedies or forms of relief in a single action, and the plaintiff desires in the second action to rely on that theory or to seek that remedy or form of relief.

*Id.* § 26(c). This describes the situation in the state proceeding in this case.[11]

Accordingly, the court concludes that DVTP's claims are not barred by *res judicata.*

### 2. Collateral Estoppel

■ "Under collateral estoppel, once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case." *Allen*, 449 U.S. at 94, 101 S.Ct. at 414 (citing *Montana v. United States*, 440 U.S. 147, 153, 99 S.Ct. 970, 973, 59 L.Ed.2d 210 (1979)).

Under the law of collateral estoppel of New Jersey, questions "distinctly put in issue" and "directly determined" preclude relitigation of the same issues by the parties against whom the estoppel is asserted. *O'Hara v. Board of Educ. of the Vocational School on the County of Camden*, 590 F.Supp. 696, 702 (D.N.J.1984) (citing *New Jersey–Philadelphia Presbytery of the Bible Presbyterian Church v. New Jersey State Bd. of Higher Educ.*, 654 F.2d 868, 876 (3d Cir.1981)), *aff'd*, 760 F.2d 259 (3d Cir.1985); *Plainfield v. Public Serv. Elec. & Gas Co.*, 82 N.J. 245, 257–58, 412 A.2d 759, 765–66 (1980); *Washington Township v. Gould*, 39 N.J. 527, 533, 189 A.2d 697, 700 (1963).

Both the papers filed with the state court and the Appellate Division opinion make clear that DVTP did not put in issue any claims other than the state law claims which could not be adjudicated in the federal action. *Cf. Switlik v. Hardwicke Co., Inc.*, 651 F.2d 852, 858–59 (3d Cir.) (precluding plaintiffs who filed first in state court and litigated constitutional claims in state court), *cert. denied*, 454 U.S. 1064, 102 S.Ct. 614, 70 L.Ed.2d 601 (1981). The Civil

---

11. Moreover, this approach appears to be consistent with that taken by federal courts. A party may not be precluded by operation of state law from bringing a claim where the due process clause would be violated. *Kremer v. Chemical Constr. Corp.*, 456 U.S. 461, 480–81 & n. 22, 102 S.Ct. 1883, 1896–97 & n. 22, 72 L.Ed.2d 262 (1982). Although *Peduto* held that merely being deprived of the forum of one's choice was not a deprivation of due process, *Peduto* did not address the situation here, namely, the situation in which the plaintiffs filed first in federal court. 878 F.2d at 729 n. 5. That the plaintiffs filed first in federal court makes this is a stronger case for finding a violation of the due process clause. This court, however, declines to reach the constitutional issue. *See Shaw v. California Dep't of Alcoholic Beverage Control*, 788 F.2d 600, 607 (9th Cir.1986) (declining to reach due process issue where state law exception to issue preclusion permitted subsequent federal action).

Appeal Case Information Statement filed in the state court proceeding includes a section requiring the appellant to list the issues to be raised on appeal. In that section, DVTP listed the following issues:

a. whether Commissioner Coye followed the proper administrative procedure for considering the subject certificate of need;

b. whether Commissioner Coye followed Dept. of Health regulations regarding regionalization of services;

c. whether Commissioner Coye improperly engaged in rule making without following the procedures of the Administrative Procedures Act.

Similarly the Appellate Division opinion restricted itself to those three issues. Accordingly, this court finds that the federal constitutional claims were not put in issue and therefore cannot be precluded in the federal action.

New Jersey follows the Restatement (Second) of Judgments § 28 and recognizes several exceptions to the general rule of preclusion. *See Zoneraich v. Overlook Hosp.,* 212 N.J.Super. 83, 94, 514 A.2d 53, 58–59, *certif. denied,* 107 N.J. 32, 526 A.2d 126 (1986); *Plainfield,* 82 N.J. at 258, 412 A.2d at 766. Among the exceptions are two that have a bearing on this case: the case where differences in the quality or extensiveness of the procedures may be outcome determinative, and the case where "the public interest militates against preclusive effect" due to the unforeseeable nature of the application of the collateral estoppel doctrine. Restatement (Second) of Judgments § 28(3), (5)(a); *Zoneraich,* at 94–95, 514 A.2d at 59.

The opportunity afforded DVTP to develop a factual record prior to the ruling by the Commissioner was limited. Similarly, the New Jersey Superior Court refused to stay its proceedings to allow the parties to supplement the record. Brief of DVTP at 3–4. Moreover, the public interest strongly supports the conclusion that DVTP is not precluded from litigating its claims. *See Delaware Valley Transplant Program v. Coye,* 678 F.Supp. 479, 483 (D.N.J.1988).

Even if this court were to conclude that New Jersey's law of collateral estoppel would otherwise operate to preclude the federal constitutional claims, the application of collateral estoppel is not automatic. One limitation to the application that has been "repeatedly recognized" is "that the doctrine of collateral estoppel cannot apply when the party against whom the earlier decision is asserted did not have a 'full and fair opportunity' to litigate that issue in the earlier case." *Allen,* 449 U.S. at 95, 101 S.Ct. at 415 (citing *Montana,* 440 U.S. at 153, 99 S.Ct. at 973). For the same reasons that prevent the application of *res judicata,* collateral estoppel cannot apply.

The procedural posture of this case further distinguishes it from one in which principles of collateral estoppel would traditionally apply. Here, plaintiffs first filed suit in federal court, and were forced, by virtue of the constitutional limits to the subject matter jurisdiction of the federal courts, *see supra* n. 5, to seek redress in state court to litigate their state court claims. *Cf. Switlik,* 651 F.2d at 858 (3d Cir.) (precluding plaintiffs who sued in federal court on federal constitutional claims after raising similar arguments in prior-commenced state court proceeding), *cert. denied,* 454 U.S. 1064, 102 S.Ct. 614, 70 L.Ed.2d 601 (1981). In this respect, this case is procedurally identical to *England v. Louisiana State Bd. of Medical Examiners,* 375 U.S. 411, 84 S.Ct. 461, 11 L.Ed.2d 440 (1964), and *New Jersey Educ. Ass'n v. Burke,* 579 F.2d 764 (3d Cir.), *cert. denied,* 439 U.S. 894, 99 S.Ct. 252, 58 L.Ed.2d 239 (1978). In *England* and *Burke,* after initially filing suit in federal court, plaintiffs were remitted to state courts pursuant to the federal abstention doctrines. *See Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971); *Railroad Commission of Texas v. Pullman,* 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941). *England* and *Burke* held that the plaintiffs were not precluded from pursuing their claims in federal court, notwithstanding the prior state court judgments, largely because to hold otherwise would deprive the plaintiffs not only of their choice of a federal forum but also of fact-finding by a federal court.

*Cf. Peduto* (no due process violation in precluding plaintiff who filed first in state court from litigating federal claims in federal court). As the Supreme Court concluded in *England*, "[t]hus, in cases where, but for the application of the abstention doctrine, the primary fact determination would have been by the District Court, a litigant may not be *unwillingly* deprived of that determination." 375 U.S. at 417, 84 S.Ct. at 465 (emphasis added).

The only distinction that can be made between the instant case and *England* and *Burke* is that here a federal determination of the complete controversy was not possible by operation of the Eleventh Amendment rather than solely through the discretionary application of the abstention doctrines. Arguably the plaintiffs should have foreseen this and brought their action only in state court; the Eleventh Amendment [12] always applies to bar claims for injunctive relief against a state based on state law, unlike the abstention doctrines which are discretionary. At the same time, this court is mindful that the Eleventh Amendment can be a procedural trap that operates to deprive the unwary of their rights to bring constitutional challenges. *Cf. England*, 375 U.S. at 418, 84 S.Ct. at 466 (voicing the fear that the abstention doctrine creates "procedural traps operating to deprive [litigants shunted from federal to state courts] of their right to a District Court determination of their federal claims"). In some respects, the instant case presents an even more compelling case than *England* or *Burke* for refusing to apply collateral estoppel, because in addition to the Eleventh Amendment obstacle, Network admits that this court stayed this proceeding pending the outcome of the state proceeding. Brief of Intervenor Network in Support of its Motion for Summary Judgment at 2 n. 1.

■ Of course it is not sufficient merely to file first in federal court; the plaintiff when she enters the state court must litigate only the state court claims to preserve the federal forum for the federal claims. As Judge Aldisert explained in *Roy v. Jones*, 484 F.2d 96, 102 (3d Cir.1973) (Aldisert, J., concurring):

Where the case is filed in federal court before a state court decision, a *Pullman*-type abstention comes into being, the federal court staying its hand until the state court acts. If, after the state proceedings terminate, the plaintiff returns, the federal court must make a factual determination. It must decide whether the federal questions were presented to the state court. If they were, and were not reserved, then, on the theory of *res judicata*, the court may properly dismiss the federal action. It is this second stage which gives the label "*England*-type" to this category of abstention....

*Id.* at 102 (Aldisert, J., concurring). *See Kovats v. Rutgers*, 749 F.2d 1041, 1048 (3d Cir.1984) (suggesting that plaintiff may reserve federal issue if she does not litigate them in state court proceeding commenced after federal proceeding). *Accord Wicker v. Board of Educ. Knott County, Kentucky*, 826 F.2d 442, 447–50 (6th Cir.1987) (allowing plaintiff who filed first in federal court to litigate in federal court federal constitutional claims that state court did not decide). The papers filed with the New Jersey Superior Court make specific reference to the pending federal court proceeding and state that "[t]his appeal has been filed to preserve certain issues of state law which cannot be adjudicated in the federal action." Civil Appeal Case Information Sheet filed with the New Jersey Superior Court at 2. The court finds this statement sufficiently clear to reserve the federal claims under the *England* doctrine.

Moreover, neither Network nor the Commissioner opposed the splitting of the claims. *Cf. Society For Good Will To Retarded Children v. Cuomo*, 652 F.Supp. 515, 526–27 (E.D.N.Y.) (allowing bifurcation of state claims in state court and federal claims in federal court), *aff'd in rele-*

---

**12.** A state may, however, waive its immunity under the Eleventh Amendment. *Pennhurst*, 465 U.S. at 120, 104 S.Ct. at 918–19 (citing *Ex*

*parte State of New York*, 256 U.S. 490, 497, 41 S.Ct. 588, 589, 65 L.Ed. 1057 (1921).

*vant part,* 832 F.2d 245 (2d Cir.1987) (per curiam). They may not be permitted to complain now.

This court is well aware of the policies of finality and repose which animate any discussion of preclusion. *See Charter Oak Fire Ins. v. Sumitomo Marine and Fire Ins. Co., Ltd.,* 750 F.2d 267, 270 (citing *Montana v. United States,* 440 U.S. 147, 153–54, 99 S.Ct. 970, 973–74, 59 L.Ed.2d 210 (1979)); *Kovats,* 749 F.2d at 1046 n. 5 ("claim and issue preclusion relieve parties of the cost and vexation of multiple lawsuits, conserve judicial resources, and by preventing inconsistent decisions, encourage reliance on adjudication") (citing *Montana,* 440 U.S. at 153, 99 S.Ct. at 973). In this case, however, the interests of judicial efficiency are outweighed by the policies underlying the Eleventh Amendment and the abstention doctrines. In *Pullman,* the Supreme Court observed that:

> In this situation a federal court of equity is asked to decide an issue by making a tentative answer which may be displaced tomorrow by a state adjudication.... The reign of law is hardly promoted if an unnecessary ruling of a federal court is thus supplanted by a controlling decision of a state court. The resources of equity are equal to an adjustment that will avoid the waste of a tentative decision as well as the friction of a premature constitutional adjudication.

312 U.S. at 500, 61 S.Ct. at 645. In this situation, however, the interests of the states in deciding issues of state law in the first instance, as well as the interests of the federal government in allowing the federal courts to decide issue of federal constitutional law, outweigh the inefficiencies of requiring the parties to litigate in each forum. The court also notes that there is no risk of inconsistent judgments because the claims have not been duplicated.

This court, of course, may not disturb the Appellate Division finding that the issuance of a CON to Network does not preclude other OPAs from operating, either because they have been grandfathered or because they have obtained a CON. The state court judgment must be given some preclusive effect as to the state law issues notwithstanding the *England* -type reservation of federal issues, for otherwise abstention becomes meaningless. *Kovats,* 749 F.2d at 1046. In this instance the state court decision is limited to the force of the CON on its face; it does not address the consequences of state's activities, about which there remain factual disputes, in encouraging hospitals to deal only with Network as the sole "statewide" state-certified procurement agency.

Accordingly, the court finds that collateral estoppel does not preclude DVTP from litigating its constitutional claims.

### B. *Network's Counterclaims*

#### 1. *DVTP's Operating Without A CON*

■ The first part of DVTP's cross-motion for summary judgment similarly revolves around the nature of a CON under New Jersey law. Network's counterclaim asserts that DVTP's operations in New Jersey violate New Jersey's Health Care Facilities Planning Act, 26 N.J.Stat.Ann. § 26:2H–1 *et seq.,* which requires that health care facilities providing health care services must have a CON from the Commissioner,[13] and must be enjoined. The parties do not dispute that DVTP operates without a CON. Pretrial Order at 44.

In its motion for summary judgment DVTP asserts that Network is merely attempting to create a private right of action from the statutory CON requirement where there is no indication that the legislature intended one. Parenthetically, one must question whether Network has standing, for it is unclear how Network suffers any injury if Network's CON is not exclusive.

To the consternation of the court, the Commissioner takes no position as to whether the New Jersey statute affords a

---

**13.** There are enumerated exceptions that allow health care facilities in existence prior to the effective date of the act to operate without a CON. *See* §§ 26:2H–7, 26:2H–7.1.

private right of action.[14] No doubt this is to avoid any inconsistency with the position taken earlier in this litigation that the Commissioner would take no stance as to DVTP's existing operations in New Jersey. *See Delaware Valley Transplant Program v. Coye*, 678 F.Supp. 479, 483 n. 3 (D.N.J.1988). In fact, the Commissioner adheres to the position that DVTP has been grandfathered in certain areas and therefore needs no CON to continue to operate in those areas.[15]

Network relies [16] on the New Jersey Superior Court Appellate Division decision in *Goldstein v. Transplant Foundation of New Jersey, Inc.*, No. A–4161–84T1 (N.J. Sup.Ct.App.Div. June 5, 1986) for the proposition that as a legal matter a health care facility must have a CON. This court, however, reads *Goldstein* differently. *Goldstein*, an unpublished opinion, merely stands for the proposition that in that particular case the Commissioner's decision was based on "substantial credible evidence," slip op. at 4, and therefore would not be overturned. There is no indication in *Goldstein* that the Commissioner would not be free to reach a different decision if faced with another set of facts. Indeed, there is no indication that the Appellate Division would not have upheld the Commissioner's decision in *Goldstein* if the Commissioner had reached the opposite

conclusion, so long as that decision was also supported by "substantial credible evidence."

Research has disclosed no New Jersey case which has implied a private right of action. Although New Jersey courts allow challenges to the denial of a CON, *e.g.*, *In re Applications of Overlook Hosp.*, 215 N.J.Super. 401, 521 A.2d 1350 (1987), N.J. Admin.Code tit. 8, § 33–3.6(f), there appear to be no cases discussing whether a private party may sue to enforce the statutory CON requirement. Accordingly, the court must evaluate what "a state court would rule to be its law." *Bernhardt v. Polygraphic Co. of America*, 350 U.S. 198, 209, 76 S.Ct. 273, 279–80, 100 L.Ed. 199 (1956) (Frankfurter, J., concurring).

To determine whether a statute affords a private right of action, New Jersey courts look to the analysis set forth in *Cort v. Ash*, 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975). *See Jalowiecki v. Leuc*, 182 N.J.Super. 22, 29, 440 A.2d 21, 25 (App.Div. 1981) (quoting *Cort*). The United States Supreme Court established the inquiry as follows:

> In determining whether a private remedy is implicit in a statute not expressly providing one, several factors are relevant. First, is the plaintiff "one of the class for whose *especial* benefit the statute was enacted," that is, does the state

---

**14.** As the Commissioner takes no position as to Network's counterclaims, it cannot be said that resolution of this issue would interfere with the state's administration of its own law. Accordingly, the court declines DVTP's invitation to abstain under *Burford v. Sun Oil*, 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943). Similarly, it is unnecessary to abstain under *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976), because the issues of state law do not appear to be difficult ones. Moreover, to the extent that this court misapprehends the state law, the decision in this case will not be binding on the state courts.

**15.** Ironically, Network asserts in that part of its brief devoted to collateral estoppel that the New Jersey Appellate Division decision in the related proceeding determined as a matter of New Jersey law that the CON issued to Network "does not preclude DVTP from continuing its New Jersey operations." Network's Brief at 3. Moreover, according to the facts as *stipulated* by

the parties, DVTP is "considered 'grandfathered' from the requirement of a Certificate of Need, as of April 30, 1985." Pretrial Order at 44. If these apparently inconsistent positions are not confusing enough, one must further question what harm Network, whose CON is not exclusive, suffers from DVTP's operations.

**16.** Network additionally asserts that DVTP's "cross-motion" is procedurally defective under Local Rule 12(C), which provides that a cross-motion must be "related to the subject matter of the original motion" to be made returnable on the same date as the original motion. Although Network is correct in this assertion, the court has the authority to change the return date under Rule 12(C). The court notes that Network's original motion for summary judgment was untimely under the Pretrial Order, and further notes that the parties have had a full opportunity to respond. Accordingly, finding no prejudice from this technical deficiency, the court overlooks it.

create a [ ] right in favor of the plaintiff? Second, is there any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one? Third, is it consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff? 422 U.S. at 78, 95 S.Ct. at 2088 (citations omitted). Applying these factors, the court finds that there is no private remedy under the Health Care Facilities Planning Act.

Network is not in that class for whose *especial* benefit the statute was enacted. The declaration of policy at Section 26:2H–1 states that the statute was enacted in "order to provide for the protection and promotion of the health of the inhabitants of the state...." Although the statute similarly states that the act is designed to "promote the financial solvency of hospitals and similar health care facilities," *id.*, this statement must be viewed in light of the primary purpose of the act, namely, the protection and promotion of the health of the inhabitants of the state.

The court further finds that implying a private remedy would be inconsistent with the legislative intent. The statutory framework of the Health Care Facilities Planning Act makes no explicit provisions for a private cause of action. The sole enforcement powers are vested in the Commissioner. For example, Section 26:2H–14 sets forth the penalties for operating in violation of the statute. That section authorizes the Commissioner to give notice of violations and requires the violating health care facility to correct the violations. Within 72 hours after this notification the Commissioner may suspend the license and order the correction of the violation. Where the New Jersey legislature has included no provision creating a private remedy, New Jersey courts are extremely reluctant to imply such a right. *Jalowiecki*, 182 N.J.Super. at 28, 440 A.2d at 25 (citing the "long-standing rule" of *Osback v. Lyndhurst Township*, 7 N.J. 371, 376, 81 A.2d 721, 723 (1951)).

Finally, to imply a private remedy would be inconsistent with the purposes of the act. The statutory provisions envision remedying violations, not punishing alleged violators. Further, the first section of the act sets forth the following declaration of policy:

> In order to provide for the protection and promotion of the health of the inhabitants of the State, promote the financial solvency of hospitals and similar health care facilities and contain the rising cost of health care services, the State Department of Health, which has been designated as the sole agency in this state for comprehensive planning ... shall have the central comprehensive responsibility for the development and administration of the State's policy with respect to health planning ...

*Id.* § 26:2H–1. This section makes clear that New Jersey had two concerns which contributed to the act: that New Jersey have a consolidated and comprehensive planning agency responsible for implementing the State's health care policy, *see Saint Joseph's Hosp. and Medical Center v. Finley*, 153 N.J.Super 214, 219, 379 A.2d 467, 469 (App.Div.1977), *certif. denied*, 75 N.J. 595, 384 A.2d 825 (1978), and that the cost of health services be kept as low as possible.

This court finds that neither policy would be advanced by implying a private right of action. Allowing private parties to bring actions to enforce the act would decentralize the New Jersey's health care planning. This conclusion is even more compelling in a situation such as the instant one, in which the Commissioner and the private litigant take opposing views as to the legality of DVTP's operating without a CON. It is equally apparent that if private parties are permitted to bring enforcement actions, litigation will increase and there will be a corresponding rise in the costs of health care services in New Jersey.

Accordingly, DVTP's motion for summary judgment will be granted as to Network's counterclaim seeking to enforce the CON requirement.

### 2. *Tortious Interference*

■ Network's counterclaim alleges that DVTP tortiously interfered with Network's relationships with New Jersey hospitals. Network now characterizes this part of its

counterclaim as a common law claim of unfair competition based on DVTP's operating without a CON. Network's counterclaim fails regardless of how it is characterized.

To state a claim for tortious interference, Network must show damages. *Norwood Easthill Assocs. v. Norwood Easthill Watch*, 222 N.J.Super. 378, 384, 536 A.2d 1317, 1320 (App.Div.1988). In *Norwood*, the Appellate Division quoted the following passage from *Kamm v. Flink*, 113 N.J.L. 582, 587–88, 175 A. 62, 66 (1934), the leading New Jersey case on the tort of interference with prospective advantage, *see Zippertubing Co. v. Teleflex Inc.*, 757 F.2d 1401, 1407 (3d Cir.1985) (so characterizing *Kamm* ):

> While a trader may lawfully engage in the sharpest competition with those in a like business, by offering extraordinary inducements, or by representing his goods to be cheaper than those of his competitors, yet when he oversteps that line and commits an act with the *malicious intent of inflicting injury on his rival's business*, his conduct is illegal, and if damage ensues from it the injured party is entitled to redress.

In the instant case, Network has failed to introduce evidence that is more than merely "colorable," *Anderson*, 477 U.S. at 249–50, 106 S.Ct. at 2510–11, that shows that DVTP's operations are unlawful or that Network has suffered damages as a result of DVTP's operations.

This court must respect the Appellate Division decision that Network's CON does not preclude DVTP from continuing to operate in New Jersey. Moreover, in the Pretrial Order at page 44 appears the following stipulation: "the organ procurement activities of ... Delaware Valley Transplant Program are considered 'grandfathered' from the requirement of a Certificate of Need as of April 30, 1985." It is conceivable that Network entered into this stipulation because it agreed that the Commissioner considered DVTP "grandfathered" from the CON requirement. Nonetheless, Network's position with respect to the counterclaims is entirely inconsistent with that taken on the issues of preclusion. Thus, as a legal matter, Network cannot claim it has been deprived of an exclusive right to solicit organ donors.

Network is unable to demonstrate damages. Network's claim centers on two specific organ procurements, one at Kessler Memorial Hospital in Hammonton, New Jersey, in April 1987, and the other in June, 1987, at Helene Fuld Medical Center in Trenton, New Jersey. With respect to the procurement at Kessler Hospital, Network alleges that "[w]hile making the necessary arrangements, plaintiff DVTP contacted Kessler Hospital and harassed hospital personnel in an attempt to force the Foundation [Network's predecessor] to leave the hospital." Pretrial Order at p. 118 (Defendant's and Intervenor's Contested Facts). DVTP has submitted two affidavits that refute these allegations.

The affidavit of Catherine Cooney, an employee of DVTP, demonstrates that there was no such harassment. Cooney's affidavit establishes the following facts:

> On April 9, 1987, Cooney received a telephone call from a Pittsburgh organ procurement program. The Pittsburgh program informed her that Transplant Foundation had offered the Pittsburgh program a liver from a donor at Kessler. The caller from the Pittsburgh program was aware that DVTP had previously worked with Kessler and was calling simply to inform DVTP. Cooney did not speak to the caller personally, but received a message questioning whether there were any problems with DVTP's operations at Kessler.
>
> Cooney telephoned a Ms. Mobley, DVTP's contact person at Kessler. Mobley explained the circumstances surrounding the referral to the Transplant Foundation and characterized the referral as a mistake. Cooney then assured Mobley that "she should not worry about the referral to the Transplant Foundation. I told her that the recovery of the organs was the important thing." Affidavit of Catherine Cooney at 3.

As is clear from the facts, there was no harassment. At best there was a misunderstanding. A mere telephone call in response to a confusing message cannot provide the basis for a finding of a "malicious intent of inflicting injury upon [a] rival's

business." *Norwood,* 222 N.J.Super. at 384, 536 A.2d at 1320 (quoting *Kamm,* 113 N.J.L. at 587–88, 175 A. at 66). *See* Restatement (Second) of Torts § 768(b) & Comment on clause (b).

Moreover, the court notes that the Transplant Foundation successfully arranged for the procurement of the organs from the donor at Kessler. In the absence of any showing of harm or damage to the Transplant Foundation's activities, Network cannot recover. *Norwood,* 222 N.J.Super. at 384, 536 A.2d at 1320.[17]

The other alleged incident of tortious interference occurred at Helene Fuld Medical Center. Viewing the facts in the light most favorable to Network,[18] the court makes the following findings of fact with respect to the second alleged incident:

> DVTP had worked with Helene Fuld on several occasions to arrange organ procurements prior to 1987. In June 1987, DVTP was requested to evaluate a potential organ donor at Helene Fuld. One of DVTP's coordinators evaluated the donor and contacted Helene Fuld the next day to inquire concerning the status of the donor. DVTP was advised that Helene Fuld had also contacted Network and that a nursing supervisor had referred the entire matter to Network. DVTP has not handled any referrals or procurements from Helene Fuld since June 1987.

As these facts demonstrate, in the case of the organ procurement at Helene Fuld there was likewise at best a misunderstanding. These facts do not support claims either for tortious interference or unfair competition.

Accordingly, the court will grant DVTP's motion for summary judgment with respect to Network's counterclaim for tortious interference.

## III. CONCLUSION

This case is one that cries out for an amicable resolution. Nonetheless, the court must rule, and in a manner which unfortunately results in prolonging this bitter and wholly unnecessary litigation.

For the foregoing reasons, the court shall deny Network's motion for summary judgment. DVTP's motion is granted in its entirety.

An appropriate order shall be entered.

---

17. Network relies on the following language in *Feiler v. New Jersey Dental Ass'n,* 191 N.J.Super. 426, 467 A.2d 276 (1983), for the proposition that it need not prove the actual loss of organ procurements:

> Feiler argues that NJDA must prove more than the potential diversion of trade from NJDA members. Rather, it must show that NJDA members have actually lost income to Feiler's competition....
> NJDA need not prove as much. Its cause of action does not require actual loss of particular patients to Feiler. It is enough to show the existence of deceptive and unlawful billing practices adopted for the purpose of diverting patients to Feiler by promising and delivering the benefits unavailable to patients of honest practitioners. The intention and the adoption of means suitable to an evil end suffice. The degree of success is not material.

*Id.* at 433, 467 A.2d at 279–80. This language stands for more than the proposition that the lack of lost donors does not preclude Network from asserting its claim. In *Feiler,* there was an improper *animus,* something tantamount to *mens rea.* In the instant case, however, the evidence does not show "undesirable commercial behavior that is both 'injurious and transgressive of generally accepted standards of common morality or law.'" *United Stations of New Jersey v. Kingsley,* 99 N.J.Super. 574, 583, 240 A.2d 702, 706 (Ch.1968) (citation omitted), *aff'd* 54 N.J. 150, 253 A.2d 813 (1969). Thus, Network's counterclaim cannot survive even if characterized as a claim for unfair competition.

18. The court strains to view the facts in the light most favorable to Network. Network, however, has not aided its cause by its failure to provide affidavits, depositions, or answers to interrogatories. The Federal Rules of Civil Procedure specifically provide:

> When a motion for summary judgment is made and supported as provided in this rule, *an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing there is a genuine issue for trial.* If he does not so respond, summary judgment, if appropriate, shall be entered against him.

Fed.R.Civ.P. 56(e) (emphasis added). *See* Advisory Committee's Note to 1963 Amendments.